**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John H. METTLER,**
**Defendant–Appellant.**

**No. 90–2136.**

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1991.

Decided July 29, 1991.

Joseph R. Wall, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Terry W. Rose, Rose & Rose, Kenosha, Wis., for defendant-appellant.

Before RIPPLE and KANNE, Circuit Judges, and NOLAND, Senior District Judge.*

NOLAND, Senior District Judge.

John H. Mettler was charged in a two count indictment with (1) conspiracy to distribute in excess of 5 kilograms of cocaine in violation of 18 U.S.C. § 2, 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 846; and (2) possession with intent to distribute approximately 17 kilograms of cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Mettler was convicted after a jury trial. The district court sentenced him pursuant to the Sentencing Guidelines ("Guidelines") to 450 months incarceration on both counts of his guilty verdict and he now appeals his sentence. We affirm.

---

* The Honorable James E. Noland, Senior District Judge for the Southern District of Indiana, is sitting by designation.

## I. BACKGROUND

### A. *Facts*

The defendant-appellant John Mettler is a pilot. Around 1980, Mettler met a Florida resident named Randy Vancel. Vancel was a friend of Bobby Hall, a member of a cocaine smuggling operation. The smuggling operation involved transporting cocaine from Caribbean islands to Ft. Lauderdale, Florida. Mettler, Vancel, Hall, and two other individuals, Chuck Coddington and Jerry Penton, all became members of this operation.

Colombians brought the cocaine to the Bahamian island, Norman's Cay. Mettler flew the cocaine back to Ft. Lauderdale International Airport for Hall's transportation organization. Vancel helped off-load the cocaine. The plane would be inspected by Customs agents and Mettler would drive the airplane into his hanger and tell Vancel where the cocaine was stored. Kilograms of cocaine were stored in the wings and cargo compartments of Mettler's airplane. Vancel would put the kilograms into duffel bags, place them into a van, and drive the van to a designated shopping center where the Colombians would take the van and the cocaine. This operation lasted approximately six months and involved four or five airplanes flown by Mettler.

In 1984, Vancel saw a former member of the operation, Jerry Penton. Mettler later talked with Vancel about working with Penton in the cocaine operation. The three met and discussed using an airstrip in Florida to bring in cocaine. Vancel was to off-load the airplanes and Mettler was to fly counter-surveillance over the landing sight in case law enforcement aircraft were in the vicinity. On one such operation in 1985, Vancel was caught and arrested; Mettler posted property to secure the bail set at $50,000.

In 1984, Vancel also began transporting cocaine to Milwaukee to a customer named "George." Mettler assisted as a pilot in

this operation. Mettler flew Vancel three or four times at a minimum fee of $5,000 plus expenses. Vancel and Mettler engaged in a similar operation with a customer named "Mike" in New Jersey.

In 1986, Vancel was arrested for possession of cocaine in Georgia. Vancel was later acquitted. While Vancel was incarcerated, a Ft. Lauderdale individual named Rich Farrell took Vancel's place. Farrell utilized Mettler for several trips to Milwaukee. Farrell would bring approximately eight to ten kilograms of cocaine. Farrell paid Mettler a flat fee of $10,000 per trip; Mettler was paid in cash, in stacks of twenty dollar bills. Farrell also used Mettler to fly to New Jersey. On each of these trips approximately three to four kilograms of cocaine were transported and Mettler was paid $5,000.

In November, 1988, Vancel began negotiations with George for the sale of ten to fifteen kilograms of cocaine. However, unbeknownst to Vancel, George was working as an FBI informant. George taped a number of conversations involving the upcoming deal. On October 19, 1989, Farrell packed thirteen kilograms of cocaine in a flight bag and four in his other luggage. The next day, Farrell met Mettler in Ft. Lauderdale and the two flew to Milwaukee together. The pair were under surveillance by the FBI. Upon arrival in Milwaukee, the two drove in a rental car to the Hyatt Regency Hotel. Mettler carried all the luggage. At the hotel, Farrell called George who in turn proceeded to the hotel to pick up the cocaine. George left with ten kilograms; Mettler was not in the hotel room at the time. The FBI obtained a search warrant and after finding Mettler and Farrell in the hotel room, discovered an additional seven kilograms of cocaine in a dresser drawer. Both men were arrested.

## B. *Sentencing Hearing*

A presentence report placed Mettler's responsibility for his charged conduct at be-

tween 93 and 103 kilograms of cocaine. The district court accepted the report and placed Mettler's beginning offense level at 36. The court added a two-level enhancement for Mettler's utilization of a special skill as a pilot. In addition, the court added a two-level enhancement for obstruction of justice for perjury on the witness stand. Thus, the court found Mettler's final offense level to be 40. The court determined that Mettler's criminal history category was Level I.

The court then analyzed the government's motion for an enhancement of Mettler's criminal history category. The court stated that the government had proven Mettler's involvement in five separate conspiracies. The court noted that the evidence of Mettler's involvement was clear and that if convicted of one of them, his criminal history category would have been enhanced to Level III. The court proceeded to enhance Mettler's criminal history category to III. A level 40 offender with a criminal history III category faces 360 months to life in prison. On May 11, 1990, Judge Warren sentenced Mettler to 450 months incarceration on both counts of his guilty verdict, to be served concurrently, and ordered Mettler to pay a fine of $10,-000.[1]

## II. ANALYSIS

 Appellate review of a district court's sentencing determination is governed by 18 U.S.C. § 3742. The court's factual determinations will be overturned only if those determinations are clearly erroneous. 18 U.S.C. § 3742(d). We review the lower court's sentencing decisions under a deferential standard. *United States v. Franco*, 909 F.2d 1042, 1045 (7th Cir. 1990). Factual questions will be left to the discretion of the district court unless we are left "with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84

---

1. At oral argument the government indicated that it had filed with the district court a motion to correct sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure based on

the cooperation the defendant has provided in the past year. This motion does not affect the disposition of this appeal.

L.Ed.2d 518 (1985) (*quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–542, 92 L.Ed. 746 (1948)).

Mettler contends that the sentence imposed was the result of an incorrect upward departure from the Guidelines. Under the Guidelines, the court may depart from the specified sentence only when it finds "an aggravating or mitigating circumstance of a kind or to a degree, not adequately taken into consideration by the sentencing commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b).

■■■ The district court enhanced Mettler's sentence based on Mettler's utilization of a special skill as a pilot. Section 3B1.3 of the Guidelines provides that "[i]f the defendant ... used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." The Commentary to this section lists pilot as an example of a special skill. We review the legal meaning of the term "special skill" under the *de novo* standard. *United States v. Hubbard*, 929 F.2d 307, 310 (7th Cir.1991). The court properly concluded that Mettler's piloting was an essential part of the drug operation in question. We agree that Mettler's piloting skill constitutes a special skill for purposes of the Guidelines.

■■ In analyzing the government's motion for an enhancement of Mettler's criminal history category, the court noted that Mettler's criminal history category would have been enhanced to Level III if he had been convicted for one of his past conspiracies. Because the evidence of these past conspiracies was clear, the court proceeded to enhance Mettler's sentence. In *United States v. Williams*, 901 F.2d 1394 (7th Cir. 1990), we explained that review of a departure is a three-step process:

First, we must determine whether a district court's stated grounds for departure are of a kind that may appropriately be relied upon to justify a departure. This is a question of law and thus, we apply essentially a *de novo* standard.

Second, we review whether the facts that underlie the grounds for departure actually exist in a given case. In reviewing this as well as other factual questions, we shall accept the district court's findings unless they are clearly erroneous.

Finally, we must determine whether the degree of departure was reasonable.... When reviewing inadequate Criminal History Category, we will give considerable leeway to a sentencing court's determination of what Criminal History Category most accurately reflects the defendant's actual criminal history.

901 F.2d at 1396–1397 (citations omitted).

The amount of drugs involved in Mettler's past conspiracies was computed using the corroborating information supplied by Mettler's co-conspirators, Vancel and Farrell. Both Vancel and Farrell testified at trial about trips they made alone and with Mettler bringing cocaine to Milwaukee and New Jersey. Vancel provided firsthand information about his participation with Mettler in the cocaine smuggling operations. Two Fort Lauderdale narcotics agents corroborated the direct testimony with hearsay information obtained from reliable informants. Sentencing factors under the Guidelines may be proven by a preponderance of the evidence. *United States v. Ross*, 905 F.2d 1050, 1054 (7th Cir.1990). The district court reviewed the evidence and made specific findings as required under *Williams*. The district court counted five separate conspiracies, besides the Milwaukee operation, in which Mettler played a part. The court's determination concerning Mettler's past criminal conduct was supported by the evidence.

The amount of cocaine transported during Mettler's trips was well in excess of the 50 kilograms required to set a base offense level at 36. Under section 1B1.3 of the Guidelines, an individual is responsible for the quantity of drugs that are part of the same course of conduct or common scheme as the offense of conviction. *United States v. Rodriguez–Nuez*, 919 F.2d 461, 464 (7th Cir.1990). This Court has noted

that "[t]he amount of narcotics considered in sentencing for conspiracy includes not only the amount involved in the transactions that were known to the defendant but also those that were reasonably foreseeable, reflecting the fact that each conspirator is responsible for the acts and offenses of each one of his co-conspirators committed in furtherance of the conspiracy." *United States v. Savage,* 891 F.2d 145, 151 (7th Cir.1989). The conspiracies obviously involved more than the 17 kilograms of cocaine seized at the time of Mettler's arrest. The trial court's finding that more than 50 kilograms of cocaine were involved in the drug conspiracies was not clearly erroneous. We conclude that the court relied on proper grounds to justify the upward departure and that the departure was reasonable. *Williams,* 901 F.2d at 1397.

■ Mettler also contends that the enhancement of his sentence violates the prohibition against *ex post facto* laws found in article I, section 9, clause 3 of the United States Constitution. Mettler argues that the conduct underlying the evidence offered at his May 11, 1990 sentencing hearing predated the effective date of the Guidelines (November 1, 1987) and that such evidence should therefore be excluded from consideration. The court relied on evidence of drug conspiracies between 1981 to 1985 that involved Mettler. "[T]o fall within the *ex post facto* prohibition, two critical elements must be present: first, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'" *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (*quoting Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)).

■ Mettler's analysis is flawed. An *ex post facto* law is one that punishes for conduct that was not criminal at the time it occurred or that increases the punishment for the conduct after the conduct is done. *See Fletcher v. Peck,* 10 U.S. (6 Cranch) 87, 3 L.Ed. 162 (1810) (*ex post facto* law is one that makes an act punishable though the act was not punishable when committed).

The Supreme Court long ago established that legislatures must not only refrain from punishing prior acts under new criminal statutes but that they are also prohibited from imposing harsher penalties retrospectively. *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). Mettler is not being punished for his past conspiracies but rather for the two counts of conspiracy and possession of cocaine for which he was convicted. Mettler's actions (conspiracy and possession of cocaine) were criminal at the time they were committed. His sentence was within the statutory maximum for both of these offenses.

Further, section 4A1.3 of the Guidelines clearly provides for the consideration of prior criminal activity for sentencing purposes. The court's consideration of Mettler's prior conspiracies does not violate the *ex post facto* provision in the Constitution. *See McDonald v. Massachusetts,* 180 U.S. 311, 21 S.Ct. 389, 390, 45 L.Ed. 542 (1901) (increasing punishment for felony because of prior convictions does not violate *ex post facto* clause where punishment is for the new crime only). Mettler simply received a stiffer penalty for his latest crime. *See Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948) (fact that one of the convictions that entered into the sentencing calculations occurred before the state's Habitual Criminal Act was passed does not make the Act invalidly retroactive); *United States v. Bucaro,* 898 F.2d 368, 371 (3d Cir.1990) (Guidelines "clearly provided that prior adjudications of juvenile delinquency were a relevant factor during sentencing").

## III. CONCLUSION

In sentencing the defendant John H. Mettler, the district court properly applied the Sentencing Guidelines. The court's findings of fact were not clearly erroneous. The sentence is therefore AFFIRMED.