UNITED STATES of America,
Plaintiff–Appellee,

v.

Hector ROSA, Efrain Salas a/k/a
"Cholo," and Luis Vazquez a/k/a
"Tito," Defendants–Appellants.

Nos. 89–2704, 90–2917 and 90–3568.

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1991.

Decided Oct. 11, 1991.

Patrick S. Layng (argued), Asst. U.S. Atty., Criminal Div., Barry R. Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Michael D. Walsh (argued), Chicago, Ill., for Hector Rosa.

Joseph R. Lopez (argued), Chicago, Ill., for Efrain Salas.

David S. Mejia (argued), Oak Park, Ill., for Luis Vazquez.

Before BAUER, Chief Judge, and WOOD, Jr. and KANNE, Circuit Judges.

BAUER, Chief Judge.

Defendants Hector Rosa, Efrain Salas, and Luis Vazquez were charged in a multicount indictment with conspiracy to distribute cocaine, heroin, and marijuana, and with the use of telephones to facilitate the drug distribution. Rosa pleaded not guilty and waived his right to a jury trial. The court found him guilty of violating 21 U.S.C. §§ 846 and 843(b) and sentenced him to 63 months in prison. Salas pleaded guilty to two counts of conspiring to possess with the intent to distribute cocaine and the use of telephones to facilitate the conspiracy. He was sentenced to 151 months in prison on the first count and a concurrent 61 month prison term on the second count. Vazquez pleaded guilty to 26 counts of participation in the drug distribution conspiracy in violation of 21 U.S.C.

§§ 846, 841(a)(1) and 843(b), and was sentenced to 192 months in prison. All three raise various challenges in this appeal to their convictions and sentences. Because none of these challenges have merit, we affirm.

None of the defendants' arguments center on the facts surrounding the entire drug distribution conspiracy. Therefore, we will forego a lengthy discussion of the facts. Rather, we will review any necessary facts in the course of disposing of the issues.

## A. Hector Rosa—Waiver of Jury Trial

Rosa argues that he did not make a knowing and intelligent waiver of his right to a jury trial because he was not assisted by a Spanish language interpreter during his waiver hearing. To support this argument, Rosa points to the district court's provision of a Spanish language interpreter during a portion of the trial of his case. A careful review of the record indicates that Rosa responded appropriately to the judge's questions, did not indicate incomprehension during the waiver proceedings, and in fact did not request the aid of an interpreter at any time during the waiver hearing. Indeed, the fact that the district court provided an interpreter when Rosa appeared confused and uncomprehending during another portion of the proceedings is indicative of its care in ensuring that Rosa was informed fully before making decisions.

■ In order for a defendant to waive his right to a jury trial, he must do so in a knowing and intelligent manner, demonstrating that he is sufficiently aware of the relevant circumstances and consequences of his waiver. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970). The validity of a waiver must be judged on the unique circumstances of a particular case. *United States ex rel. Wandick v. Chrans,* 869 F.2d 1084, 1087 (7th Cir.1989). In addition, in order for a waiver to be valid, the defendant must understand the right he is abandoning. *United States ex rel. Williams v. DeRobertis,* 715 F.2d 1174, 1179 (7th Cir.

1983). The district judge's determination as to whether a waiver was knowingly and intelligently executed is a factual question, subject to review for clear error. *Cf. United States v. Heidecke,* 900 F.2d 1155, 1161 (7th Cir.1990).

During the waiver hearing the district court informed Rosa of his right to a jury trial, of his right to participate in the selection of the jury, of the requirement that the jury verdict be unanimous, and of the manner in which a bench trial is conducted. *See Williams,* 715 F.2d at 1182 (district courts required to inform defendants of these aspects of federal jury system). The district court also asked Rosa a number of questions regarding his background, as illustrated by the following exchange:

THE COURT: Are you Hector Rosa?

THE DEFENDANT: Yes.

THE COURT: .... How old are you, Mr. Rosa?

THE DEFENDANT: 48.

THE COURT: How far have you gone in school?

THE DEFENDANT: Second year of high school.

Transcript of proceedings on May 15, 1991 ("Hearing Tr.") at p. 2.

Rosa then answered "yes" or "no" to a series of other questions asked in English. *Id.* at p. 4. At no point during this exchange did Rosa or his lawyer indicate that he was confused or unable to understand the nature of the proceedings. At the close of this colloquy, the district court found that Rosa made a knowing, intelligent, and voluntary waiver of his right to a jury trial. *Id.* at p. 4.

Nevertheless, Rosa points to a discussion during his trial regarding his right to remain silent, during which the district court directed that a translator participate in the exchange. Rosa suggests that this exchange illustrates his inability to comprehend the rights he was abandoning when he waived a trial by jury. The exchange went as follows:

THE COURT: Do you wish to testify or not testify in this case?

THE DEFENDANT: I do not, no. I don't want to testify.

THE COURT: Now, I spoke to you in English, and your lawyer spoke to you in English. Did you understand what both of us just said to you?

THE DEFENDANT: I can't understand everything.

THE COURT: You understood it?

THE DEFENDANT: Sometimes I can't answer, because I can't—

THE COURT: Ms. Haas, will you translate this, please?

*Id.* at pp. 87–88.

 This exchange does not support Rosa's argument that he did not make a knowing and intelligent waiver of his right to a jury trial. Matters regarding the use of an interpreter are left to the discretion of the district court. *United States v. Moya–Gomez,* 860 F.2d 706, 740 (7th Cir. 1988). *See also Valladares v. United States,* 871 F.2d 1564, 1566 (11th Cir.1989). That the district court allowed for the use of an interpreter during part of the proceedings in response to the defendant's expressions of confusion does not indicate that the district court erred in not providing a translator at an earlier stage in the proceedings. In fact, the district court's responsiveness in providing an interpreter when it appeared it might be helpful is indicative of the court's sensitivity to the limits of Rosa's ability to understand English. Moreover, during his sentencing hearing, Rosa testified and responded in English to a bevy of questions asked, in English, by his lawyer and by the court. In light of all this, we cannot conclude that the district court's failure to provide an interpreter at the waiver hearing—when no request was ever made and when the defendant responded in an appropriate manner to English questions—constitutes an abuse of the court's discretion. Rosa understood English sufficiently well to make a knowing and intelligent waiver of his right to a jury trial.

### B. Efrain Salas—Sentencing

Salas challenges the district court's determination of his sentence. Like the other defendants, Salas was sentenced under the United States Sentencing Guidelines ("Guidelines"). Salas contends that the court miscalculated his base offense level under the Guidelines by including in the calculation the full amount of drugs handled in the conspiracy, including three to ten kilograms of heroin. Salas claims that the heroin distribution was not reasonably foreseeable to him given his limited participation in the conspiracy. Furthermore, Salas challenges the district court's application of the Guidelines in this case because the conspiracy began before the effective date of the Guidelines.

 The district court's findings of fact, including the amount of drugs involved in a conspiracy, under the Sentencing Guidelines are reviewed deferentially and will not be disturbed absent clear error. *United States v. Cagle,* 922 F.2d 404, 406 (7th Cir.1991). The pre-sentence report prepared by the Probation Department and used as a guide by the district court calculated Salas' base offense level at 34, including the total amount of heroin distributed by the larger conspiracy of which Salas was a participant. Salas received a two point reduction for acceptance of responsibility under Guidelines § 3E1.1, resulting in an offense level of 32. The sentences of 151 months on one count and 61 concurrent months on the second count were within the range established for that offense level.

Section 1B1.3 of the Guidelines directs the district court to consider in its computation of offense levels numerous categories of "relevant conduct," including "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would otherwise be accountable, that occurred during the commission of the offense." § 1B1.3(a)(1).[1] Further, § 1B1.3(a)(2) directs that "acts or omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" should be included in the base offense level calculation, and § 2D1.4(a) directs that the base calculation for a conspiracy involving drugs "shall be

---

1. This and all other Guidelines provisions examined in this opinion include the amendments effective November 1, 1989, but not those effective November 1, 1990.

the same as if the object of the conspiracy or attempt had been completed."

 Thus, a defendant who pleads guilty to a drug distribution conspiracy is held accountable, for purposes of sentencing, for all drug transactions of which he was aware or those that he should have reasonably foreseen. *United States v. Scroggins*, 939 F.2d 416, 422 (7th Cir.1991); *United States v. Guerrero*, 894 F.2d 261, 266 (7th Cir.1990). The government bears the burden of showing, by a preponderance of the evidence, the amount of drugs involved in an offense. *United States v. Ross*, 905 F.2d 1050, 1054 (7th Cir.1990). Therefore, the district court correctly calculated Salas' base offense level if the government showed by a preponderance of the evidence that Salas could have reasonably foreseen that the drug conspiracy's object included the distribution of three to ten kilos of heroin. *Cf. United States v. Ruiz*, 932 F.2d 1174, 1183–84 (7th Cir.1991).

 The record reveals that Salas was not, as he suggests, merely a peripheral coconspirator unaware of the true breadth of the drug operation in which he was involved. Indeed, the evidence introduced at Salas' sentencing hearing indicates that he was in frequent contact with Luis Vazquez, the central organizer of the drug distribution network. Further, Salas conceded that he used code words such as "brown cars" and "white cars" in telephone conversations with Mr. Vazquez in order to discuss heroin and cocaine transactions and that he was aware that Mr. Vazquez used a Chicago area restaurant as the base for his widespread distribution of cocaine, heroin, and marijuana. At the time of his arrest, Salas possessed both heroin and cocaine. In the face of such evidence, it was not clear error for the district court to conclude that Salas could reasonably have foreseen the distribution of heroin as well as cocaine. *Cf. United States v. Rodriguez–Luna*, 937 F.2d 1208, 1212 (7th Cir.1991) (quality and quantity of cocaine seized from defendant supports conclusion that defendant acted as part of larger distribution operation).

Salas' position is distinguishable from that of the defendant in *Ruiz*, where this court reversed the district court's findings regarding the amount of drugs involved in a distribution conspiracy because the district court based its conclusion on the mere boasting of the defendant regarding his ability to obtain large quantities of cocaine. *Ruiz*, 932 F.2d at 1183–84. Here, the government introduced concrete evidence indicating Mr. Salas' knowledge of the scope of the distribution conspiracy. Further, unlike the quantities of narcotics in *Ruiz*, which were mentioned but never negotiated or delivered, the heroin quantities in Salas' conspiracy were paid for and delivered. The district court concluded that Salas knew, or could have reasonably foreseen that payment and delivery would occur. We therefore find no error in the district court's decision to include the heroin in the calculation of Salas' sentence.

 Briefly, Salas also contends that his constitutional rights prohibiting *ex post facto* punishment were violated because the district court applied the Guidelines even though the conspiracy began prior to their effective date. This contention is meritless. As Salas concedes, the conspiracy continued past the effective date of the Guidelines, regardless of the date of its beginning. Such offenses that "straddle" the effective date of the Guidelines can be considered under the Guidelines. *See United States v. McKenzie*, 922 F.2d 1323, 1328 (7th Cir.1991); *United States v. Fazio*, 914 F.2d 950, 958–59 (7th Cir.1990). Indeed, as we recently explained, the constitutional prohibition against *ex post facto* punishment is directed principally toward punishment for acts *not illegal* at the time of their commission or an unexpected punishment. *United States v. Mettler*, 938 F.2d 764, 768 (7th Cir.1991). Salas' participation in the distribution of cocaine and heroin was at no time legal, regardless of the effective date of the Guidelines. Thus, Salas raises no valid constitutional argument.

### C. Luis Vazquez—Sentencing

Vazquez pleaded guilty to 26 counts of the 76 count indictment in which he was

named, and offered to cooperate with the government in its on-going investigations of the conspiracy as well as other criminal matters. He entered his guilty plea and agreed to aid the government without the benefit of any written plea agreement. No written plea agreement was ever executed between Vazquez and the government. Vazquez now challenges his 16 year sentence, contending that the government breached an unwritten promise to submit a motion for a sentence below the applicable Guidelines range based on his "substantial assistance." *See* Guidelines § 5K1.1.

Although Mr. Vazquez's frustration at the government's refusal to submit a motion for a downward departure based on his assistance to them is understandable, his legal argument is meritless. The Guidelines vest the discretion to seek a downward departure with the government: "[a court may depart from Guidelines] upon motion of the government stating that the defendant has provided substantial assistance...." § 5K1.1. Without such a motion by the government, the sentencing court is not authorized to so depart. *See e.g., United States v. Donatiu*, 922 F.2d 1331, 1333–34 (7th Cir.1991); *United States v. Brick*, 905 F.2d 1092, 1098 (7th Cir.1990); *United States v. Lewis*, 896 F.2d 246, 249 (7th Cir.1990).

Although this court has yet to determine under what circumstances the government might be required to submit a motion pursuant to § 5K1.1, the absence of a written plea agreement or other written promise by the government makes the instant case an easy one. The evidence as to the parties' oral understanding is that the government agreed only to "inform" the sentencing court of the cooperation Vazquez provided. In fact, it is clear from the transcript of his sentencing hearing that the government did inform the district court of Vazquez's cooperation. For example, the government informed the court that:

"[Vazquez's] cooperation included debriefings with the Government that gave some information, but some of the information that this individual could have given that he knew about, he did not. He basically would not tell us about certain trips that he made to San Francisco where he attempted to get white heroin.... The one thing he did do, he confronted [another defendant] who was basically on the brink ... So, there is no question that Mr. Vazquez assisted the Government in making that defendant plead guilty...."

*See* Transcript of Sentencing Proceedings on November 23, 1990 ("Sent. Tr.") at pp. 6–9.

Vazquez offers no evidence, nor is any included in the record, to establish that the government promised anything more than this. Thus, Vazquez has not provided any basis for the disturbance of his sentence because the government decided not to submit a motion for a downward departure from the Guidelines.

Nonetheless, the government's behavior merits comment. A careful review of the record reveals an apparently cavalier rendition of Vazquez's assistance. Although the government did inform the district court of Vazquez's assistance, the information was almost buried in an avalanche of examples of the lack of assistance offered by Vazquez. Perhaps Vazquez's assistance was less than the government hoped; nonetheless, if the government promised and planned to inform the court of that assistance, it should have done so in good faith. Damning with praise this faint appears to shirk that duty.

\* \* \* \* \* \*

For the foregoing reasons, the convictions and sentences of each defendant in this consolidated appeal are AFFIRMED.