**UNITED STATES of America**

v.

**Ainsley RICHARDS.**

**No. SCr. 90–47.**

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 8, 1992.

William Grimmer, Asst. U.S. Atty., South Bend, Ind., for U.S.

Noah Lipman, New York City, for Ainsley Richards.

## FINDINGS AND CONCLUSIONS PERTINENT TO SENTENCING RANGE

MILLER, District Judge.

Ainsley Richards has pleaded guilty to a charge of conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana. 21 U.S.C. § 846. As part of his plea agreement, the government agreed to dismiss one count of operating a continuing criminal enterprise, 21 U.S.C. § 848, ten counts of possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), one count of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), eleven counts of using a telephone to facilitate the distribution of marijuana, 21 U.S.C. § 843(b), and fifteen counts of causing interstate travel in aid of distribution of controlled substances, 18 U.S.C. § 1952(a)(3). The government also agreed to recommend a sentence at the bottom of the sentencing range.

Mr. Richards faces imprisonment for not less ₒthan ten years nor more than life imprisonment, 21 U.S.C. § 841(b)(1)(A)(vii), a fine of as much as $4,000,000.00, 21 U.S.C. § 841(b)(1)(A)(vii), at least five years of supervised release, 21 U.S.C. § 841(b)(1)(A)(vii), and a special assessment of $50.00. 18 U.S.C. § 3013.

■ Because the conspiracy lasted beyond November 1, 1987, the United States Sentencing Guidelines ("U.S.S.G.") promulgated pursuant to the Sentencing Reform Act of 1984 govern this case. *United States v. Morrison*, 946 F.2d 484, 492 (7th Cir.1991); *United States v. Edwards*, 945 F.2d 1387, 1390 (7th Cir.1991) (guidelines applied to conspiracy that began in 1986 and continued through December 1988). A presentence report was prepared, and the parties were afforded the opportunity to object to its recommendations. The government accepted the report, but the defense submitted three substantial objections. First, the presentence report recommended a base offense level of 34 in light of the drug quantities involved; Mr. Richards objects to any offense level above 32. Second, the presentence report recommended an enhancement of two levels due to the possession of firearms; Mr. Richards objects to that enhancement. Finally, the presentence report recommended an enhancement of four levels due to Mr. Richards' role in the offense; Mr. Richards objects to that enhancement.

A day-long evidentiary hearing was conducted on December 19, 1991, and the court heard nearly two hours of argument on these issues on January 3, 1992. The court addresses each objection in turn.

### I.

#### A.

This conspiracy involved the harvesting and distribution of a low-grade marijuana known as "ditchweed", which marijuana salesmen use as "filler" for higher grade marijuana. Ditchweed was harvested in Indiana and Nebraska and transported to Florida and New York for further distribution. Mr. Richards was the New York purchaser.

From the early part of 1986 until May 1988, certain members of the Rector family—Ron, Tim, Doug, and Joe—were dealing ditchweed to buyers in Miami and New York City. In 1986, Doug met a broker (Edgardo Velez) who arranged for the ditchweed to be taken to Mr. Richards in the Bronx. The loads initially went through Florida, but then began to go directly to New York from Ron Rector during the summer of 1986. The government's version of the offense in the presentence report describes one such shipment in the fall of 1986, in which 730 pounds of Nebraska ditchweed was transported by U–Haul to Mr. Richards in New York. After a substantial sum of money was seized from a courier in September 1986, Doug Rector decided to deal directly with Mr. Richards rather than go through others. Ron and Doug Rector then used various drivers, including Rex Froedge, to deliver the ditchweed to Mr. Richards.

Events continued on this course until May 1988, when most of the Rectors were indicted in this court and incarcerated. Ron Rector provided Rex Froedge with Mr.

Richards' telephone number to allow the business to continue. In August 1988, another Rector (Mike) escaped from an Indiana prison and joined up with Mr. Froedge. The two of them continued to arrange for ditchweed to be picked and taken to Mr. Richards in New York, until Mike Rector was arrested in December, 1988.

### B.

These facts, drawn from the presentence report, were not challenged by the government or the defense. Additional facts were presented through the testimony of the case agent, Trifon K. Magrames, who testified to what others reported to him and to the grand jury. Mr. Richards made strong attacks on the credibility of those others; those attacks are noted below.

Mr. Richards directs a Confrontation Clause argument to all of Special Agent Magrames' testimony. Mr. Richards argues that the Confrontation Clause precludes the use of hearsay evidence such as that presented here, a proposition for which he cites *United States v. Fortier*, 911 F.2d 100, 102–104 (8th Cir.1990), and *United States v. Silverman*, 945 F.2d 1337, 1343–1346 (6th Cir.1991), *reh'g granted and opinion vacated* (Dec. 4, 1991). The court disagrees.

■■■ The Seventh Circuit has upheld the use of hearsay—evidence derived from persons who did not testify and were not subject to cross-examination—on several occasions. In many cases, evidence adduced at trial both satisfies the Confrontation Clause and provides the district judge with a factual basis sufficient to make the findings required by the Sentencing Guidelines. *See, e.g., United States v. Jones*, 950 F.2d 1309 (7th Cir.1991). The court must look elsewhere for the factual basis for its findings when, as here, no trial has been conducted. The Seventh Circuit has held that a sentencing court may consider a case agent's testimony as to what co-conspirators related. *United States v. Musa*, 946 F.2d 1297, 1306 (7th Cir.1991). Indeed, the sentencing court even may consider the case agent's unsworn statements. *United*

*States v. Blythe*, 944 F.2d 356, 363 (7th Cir.1991).

■■■ The Seventh Circuit has not considered the issue anew since the Sentencing Guidelines' adoption and has not specifically addressed whether the advent of the Guidelines has breathed new life into confrontation rights at sentencing. Under the approach presently in use in Seventh Circuit, the Due Process Clause, rather than the Confrontation Clause, governs the factual basis for sentencing determinations. *See United States v. Harris*, 558 F.2d 366, 373 (7th Cir.1977); *accord, United States v. Kikumura*, 918 F.2d 1084, 1102–1104 (3rd Cir.1990). This approach, which has been applied in Guidelines cases, *United States v. Jewel*, 947 F.2d 224, 237 & n. 21 (7th Cir.1991), is sensible; a defendant who pleads guilty waives his confrontation rights, Fed.R.Crim.P. 32(c)(3), but not his right to due process of law. Thus, under the Seventh Circuit's view, "Hearsay is admissible at sentencing so long as it is reliable and defendant has a reasonable opportunity to rebut the contested hearsay testimony." *United States v. Rodriguez-Luna*, 937 F.2d 1208, 1212 n. 4 (7th Cir. 1991). The court may not rely on unreliable hearsay information, but the prohibition is found in the Due Process Clause, not the absence of confrontation. *United States v. Barnes*, 907 F.2d 693, 695 (7th Cir.1990). If informants are unidentified, as in *Silverman* and *Fortier*, the hearsay evidence may lack sufficiently reliability to satisfy due process requirements. Here, all sources of information were identified.

■■ The court agrees with Mr. Richards that if the Confrontation Clause applies to sentencing proceedings, his confrontation rights were not satisfied at his sentencing hearing. Special Agent Magrames' testimony was drawn from a variety of informants and sources of information. No firmly established hearsay exception supports admission of the information Special Agent Magrames drew from the informants; accordingly, the Confrontation Clause would require that the declarant be shown to be unavailable and that the information be shown to be reliable. *Idaho v.*

**1378**

*Wright,* —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). There was no showing that the declarants were unavailable to testify at the sentencing hearing. With minor exceptions noted below, however, the court finds the information sufficiently reliable to support sentencing decisions. The Due Process Clause requires no more.

Much of the information is corroborated by sworn testimony, either given at trial[1] or before a grand jury.[2] Much of the information is corroborated by independent police records of confederates' arrests reported by informants.[3] Other parts of the information are corroborated by hotel records,[4] telephone records and Western Union records[5] indicating confederates' presence at locations reported by informants, placement of an order for marijuana, and payment for deliveries.

## II.

Mr. Richards has pleaded guilty to a conspiracy to distribute marijuana. U.S.S.G. § 2D1.4(a) provides that the offense level for conspiracy shall be the same as if the conspiracy's object had been completed. Accordingly, the base offense level must be determined by reference to the drug quantity table set forth in U.S.S.G. § 2D1.1(c). In its version of the offense in the presentence report, the government contended that "approximately 8,500 pounds of documented marijuana was shipped from the early part of 1986 until the conclusion of the conspiracy in this case." This equates to 3,855 kilograms of marijuana, which would invoke application of offense level 34. U.S.S.G. § 2D1.1(c)(5) (3,000–10,000 kilograms). In its sentencing memorandum, the government refined its contention to 7,885 pounds, or 3,584 kilograms, which still would invoke level 34.

Mr. Richards concedes participation in a conspiracy involving at least 1,000 kilograms (2,205 pounds) of marijuana, which would produce an offense level of 32, U.S.S.G. 2D1.1(c)(6) (1,000–3,000 kilograms), but disputes the existence of greater quantities.

The issue in this case differs from the common questions concerning drug quantities under the guidelines. The usual cases involve difficult applications of the "relevant conduct" principles of U.S.S.G. § 1B1.3, requiring the sentencing court to determine the quantities which, though handled by others, were reasonably foreseeable by the defendant. *See, e.g., United States v. Lawson,* 947 F.2d 849, 853 (7th Cir.1991); *United States v. Jewel,* 947 F.2d 224, 233 (7th Cir.1991); *United States v. Edwards,* 945 F.2d 1387 (7th Cir.1991); *United States v. Welch,* 945 F.2d 1378, 1384 (7th Cir.1991). Relevant conduct is not an issue here; the court need not consider any shipment not alleged to have gone to, or intended to have gone to, Mr. Richards.[6]

■■■■ The court may approximate quantities of unseized drugs, U.S.S.G. § 2D1.4, Application Note 2, but the government must demonstrate its entitlement to the enhancement by a preponderance of the evidence. *United States v.*

---

1. *See, e.g.,* Government's Exhibit 26 (Edgardo Velez's testimony in the Rectors' trial).

2. *See, e.g.,* Government's Exhibit 1 (Edgardo Velez's grand jury testimony), Exhibit 3 (Leslie Allen's grand jury testimony), Exhibit 5 (Ronald "Bunk" Prater's grand jury testimony), Exhibit 13 (Mike Rector's grand jury testimony), and Exhibit 14 (Tammy Porter's grand jury testimony).

3. *See, e.g.,* Government's Exhibit 2 (record of Henry Melendez's arrest in Pennsylvania), Exhibit 3 (record of Henry Melendez's arrest in New Jersey), Exhibit 7 (report of Rex Froedge's arrest in Indiana), Exhibit 8 (report of Mike Rector's arrest in Indiana), and Exhibit 9 (report of Robert Potts' arrest in Ohio).

4. *See, e.g.,* Government's Exhibit 10 (receipt for rooms from Town & Country Motor Lodge in name of Mike Porter, an alias Mike Rector used), and Exhibit 11 (records concerning room at Sheraton Plaza Inn in April Johnson's name).

5. *See, e.g.,* Government's Exhibit 12 (record of money orders wired to April Johnson and David Johnson).

6. The "aggregation rule" presents no issue here because each of the shipments on which the government relies was set forth in an overt act in the count of the indictment to which Mr. Richards has pleaded guilty. *See United States v. Duarte,* 950 F.2d 1255 (7th Cir.1991).

*Schuster,* 948 F.2d 313 (7th Cir.1991); *United States v. Rosa,* 946 F.2d 505, 509 (7th Cir.1991). The government may rely on hearsay evidence to satisfy its burden of proof, *United States v. Blythe,* 944 F.2d 356, 363 (7th Cir.1991), as long as it is reliable and the defendant is afforded an opportunity for rebuttal. *United States v. Agyemang,* 876 F.2d 1264, 1272 (7th Cir. 1989). Essentially, the court must determine whether the government has shown that it is more likely than not that Mr. Richards was involved in the distribution of more than 3,000 kilograms of marijuana. The court must examine each transaction the defendant disputes. *United States v. Jewel,* 947 F.2d at 234.

 The court concludes that the government has met its burden. Evidence introduced at the sentencing hearing convinces the court that Mr. Richards received:

—450 pounds (3 trips of 150 pounds each) from Edgardo Velez from early 1986 to the spring of 1986;

—600 pounds (4 trips of 150 pounds each) from Mr. Velez from spring 1986 into the summer of 1986;

—1,500 pounds (10 trips of 150 pounds each) from Mr. Velez in the summer of 1986;

—200 pounds (a single shipment) from Mr. Velez in the summer of 1986;

—730 pounds (a single shipment) from Mr. Velez in September 1986 (although the proceeds were seized during Mr. Velez's return);

—200 pounds (a single shipment) from Ronald Prater and John Miller in September 1986;

—265 pounds (a single shipment) from Ronald Prater and Wayne Stone in March 1987;

—200 pounds (a single shipment) from Rex Froedge in August 1987;

—40 pounds (a single shipment) from Rex Froedge in August 1988;

—800 pounds (2 shipments) from Mike Rector and Jeffrey Wireman in late summer 1988 or early fall 1988;

—150 pounds (a single shipment) from Rex Froedge and Mike Rector on September 24, 1988;

—150 pounds (a single shipment) from Rex Froedge and Mike Rector on October 4, 1988;

—160 pounds (a single shipment) from Mike Rector in the fall of 1988;

—150 pounds (a single shipment) from Mike Rector on October 20, 1988;

—150 pounds (a single shipment) from Mike Rector on October 25, 1988; and

—800 to 1,000 pounds (5 shipments) from Mike Rector in the fall of 1988.

In addition to that 6,545 to 6,745 pounds of marijuana (2,968.8 to 3,059.5 kilograms), Mr. Richards:

—was to have received a 200–pound shipment of marijuana in July 1986, but that shipment was seized by state police in Pennsylvania;

—was to have received a 200–pound shipment of marijuana in December 1986, but that shipment was seized by state police in New Jersey;

—was to have received a 115–pound shipment in October 1988, but that shipment was seized by state police in Ohio;

—also sold Mike Rector five pounds of marijuana and half a pound of cocaine (the equivalent of 99.9 pounds of marijuana, U.S.S.G. § 2D1.1, Application Note 10) in December 1988; and, finally,

—arranged with Mike Rector for the purchase of 700 pounds of marijuana in February 1989, and sent Western Union money orders totalling $5,000.00 as advance payment for that purchase.

These additional quantities attributable to Mr. Richards total 1,320 pounds of marijuana. Thus, considering only the marijuana Mr. Richards received, the marijuana Mr. Richards had agreed to receive but was prevented from receiving by arrests of couriers, the drugs Mr. Richards sold to Mike Rector, and the marijuana Mr. Richards agreed to purchase in 1989, at least 7,865 pounds (or 3,563.4 kilograms) of marijuana or its equivalent is directly attributable to Mr. Richards. Any quantity over 6,614 pounds is sufficient to place Mr. Richards in offense level 34.

Mr. Richards challenges the weight of the information received from informants

who, not surprisingly, kept no records of the travels or loads. Other than Edgardo Velez, none of the informants were asked to recall large numbers of trips that had occurred long ago. The court believes that their recollections are reasonably accurate; even if Mr. Velez was off by two or three trips, the difference would be insufficient to reduce the overall quantity involved to below 3,000 kilograms.

■ Mr. Richards also notes that the substance involved was a low-grade marijuana. While he concedes that, for purposes of the Sentencing Guidelines, marijuana is marijuana, he argues that the government must present some evidence that the substance involved was, in fact, marijuana. Mr. Richards' own conduct presents sufficient evidence to satisfy the court on this point: Mr. Richards received the substance thought to be marijuana, paid for it, and continued to receive further shipments. Had the substance or any significant portion of the substance not been the advertised ditchweed, it seems likely that Mr. Richards would not have continued to accept and purchase shipments. The record leaves the court with no doubt that the substance Mr. Richards was receiving was marijuana.

Because Mr. Richards received more than 3,000 kilograms, but less than 10,000 kilograms of marijuana, the base offense level is 34.

### III.

U.S.S.G. § 2D1.1(b)(1) provides for a two-level enhancement of the offense level if a firearm was possessed during the crime's commission. The government seeks this enhancement on the basis of weapons carried by people who accompanied Mr. Richards during transactions. Mr. Richards denies ever asking or requiring that those accompanying him to drug transactions carry weapons. He concedes the possibility that some of his prospective purchasers carried weapons when receiving marijuana, but denies that those persons were under his control or formed any part of an organization.

■ The Seventh Circuit has recognized several ways in which possession of a weapon may be attributed to a defendant who did not physically possess the weapon. First, a defendant may be deemed to have had constructive possession of a weapon not physically in his possession. *United States v. Armond,* 920 F.2d 480, 481 (7th Cir.1990). The government has presented no evidence to indicate that Mr. Richards constructively possessed the weapons in others' possession.

■ Second, a defendant in a drug case may be found to have possessed a weapon found in his home if his home was the site of the charged drug transactions. *United States v. Atterson,* 926 F.2d 649, 662–663 (7th Cir.), *cert. denied sub nom. Laurelez v. United States,* — U.S. —, 111 S.Ct. 2909, 115 L.Ed.2d 1072 (1991). The record before the court would not support such a finding. The government presented evidence that weapons were found in an apartment where Mr. Richards was sought, but no evidence that Mr. Richards actually lived there or that he conducted his drug transactions from that location.

■ Finally, the Seventh Circuit has held that a conspiracy defendant may be said to have possessed a weapon actually held by a co-conspirator in furtherance of the conspiracy, if both were members of the conspiracy at the time and the co-conspirator's possession of a weapon was reasonably foreseeable by the defendant. *United States v. Missick,* 875 F.2d 1294, 1301–1302 (7th Cir.1989); *accord, United States v. Martinez,* 924 F.2d 209, 210 (11th Cir.), *cert. denied sub nom. Duarte v. United States,* — U.S. —, 112 S.Ct. 203, 116 L.Ed.2d 163 (1991). The record before the court would not suffice to support such a finding in this case. The *Missick* court wrote,

Missick may still have been properly subject to an enhanced sentence based on the possession of firearms by Whisner and Fluhr without individually possessing a firearm under the theory of co-conspirator liability established in *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 [1946]. In or-

der to do so, Whisner, Fluhr and Missick must have been charged as co-conspirators in the conspiracy to import cocaine under Count One of Missick's indictment, Whisner or Fluhr must have been found possessing a firearm in furtherance of the conspiracy, and Missick must have been found to be a member of the conspiracy at the time of the firearm possession.... However, Count One of Missick's indictment charged only Settles and "diverse other persons known and unknown" in the conspiracy to import. 875 F.2d at 1301–1302.

The government contends that although Mr. Richards never was seen armed with a weapon, persons associated with Mr. Richards would be armed when Mr. Richards received ditchweed deliveries.[7] Mike Rector, April Johnson, and Tammy Porter so testified before the grand jury. These three informant/co-defendants corroborate each other; the court finds the information to be sufficiently reliable for consideration at sentencing.

The testimony of Ms. Porter, Ms. Johnson, and Mike Rector would not suffice to warrant the weapons enhancement under the *Missick/Pinkerton* approach. None of the informants could identify the persons who bore arms; the court cannot find that those who possessed the weapons were members of the conspiracy.

The government argues that the enhancement is appropriate, notwithstanding the absence of supportive law from this circuit, and points to cases from other circuits that support an enhancement under these circumstances. In *United States v.*

*Morgan,* 942 F.2d 243, 246–247 (4th Cir. 1991), a member of the Sentencing Commission wrote: "The section 2D1.1(b)(1) enhancement properly applies when a defendant has knowledge of his coconspirator's possession of a firearm during acts furthering the conspiracy." In *United States v. Bianco,* 922 F.2d 910, 912 (1st Cir.1991), the court held that "the sentencing guidelines expressly require a two-level increase in a defendant's base offense level whenever a co-defendant's possession of a firearm in furtherance of their joint criminal venture was reasonably foreseeable by the defendant."

The Sentencing Guidelines support these holdings of the First and Fourth Circuits. U.S.S.G. § 2D1.1(b)(1) does not require that the defendant possess the firearm; it states that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." Weapons were possessed during the marijuana deliveries to Mr. Richards. Application Note 3 to that section provides, "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense", as when a defendant, arrested at his residence, had an unloaded hunting rifle in the closet. Given the surrounding circumstances—armed people greeting those who arrived with drugs—the court finds that the weapons were connected with the offense and that Mr. Richards was aware of the weapons' presence.

Nothing in *Missick* precludes the approach taken by the First Circuit in *Bianco* and by the Fourth Circuit in *Morgan.* Un-

---

7. The government relied on two theories, as well, but neither is persuasive.

First, Rex Froedge told agents that on one occasion, co-defendants "Ali" and "Berris" (who worked for Mr. Richards) confronted him outside a Jasper County, Indiana McDonald's, threatened him, and fired a round at him. The court rejects the use of this incident for any enhancement purpose. The record does not indicate when this incident may have occurred, so the court cannot find, under *Missick,* that the incident occurred during the conspiracy. More importantly, the report is entirely uncorroborated; no police report was ever filed. Although other informants and information corroborated Mr. Froedge's reports of his marijua-

na dealing, no other evidence supports his report of the shooting. The government avoided significant reliance on this incident at the sentencing of other defendants (including Mr. Froedge), and the court deems the information insufficiently reliable to support an enhancement.

Second, the government introduced its Exhibit 25, a photograph depicting Doug Rector with a firearm. No explanatory testimony was given. The court agrees with the defense that this photograph does not establish that a co-conspirator possessed a weapon during the conspiracy, because nothing indicates when the photo was taken.

like *Missick,* there is ample evidence from which to infer (as the court does) that the defendant knew that others wore firearms during the transactions; the court need not resort to a *Pinkerton* analysis. The approaches of the First and Fourth Circuits are sound, consistent with the Sentencing Guidelines, and compatible with the law of the circuit.

Mr. Richards argues that the offense level cannot be enhanced on the basis of an unrecovered firearm. The court disagrees. The Sentencing Guidelines require enhancement if a firearm was possessed, not if the firearm was both possessed and recovered by authorities. Several methods are available to prove that a firearm was possessed; only one such method involves an exhibit sticker's placement on the firearm in question. The government's proof, consisting of reports from eyewitnesses (Ms. Johnson, Ms. Porter, and Mike Rector), satisfies the court that it is more likely than not that weapons were possessed during the offense and that Mr. Richards knew of it.

Accordingly, the defendant's offense level is adjusted upward by two levels to level 36.

## IV.

 U.S.S.G. § 3B1.1(a) provides, "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the offense level] by 4 levels." U.S.S.G. § 3B1.1(b) provides, "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase [the offense level] by 3 levels." Application Note 3 to § 3B1.1 sets forth factors the court should consider, including the exercise of decision-making authority, the nature and participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of fruits of the crime, the degree of participation in planning and organizing the offense, the nature and scope of the crime, and the degree of control and authority exercised over others. *See generally Unit-*

*ed States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989) ("Organizers and leaders of criminal activity play an important role in the planning, developing, directing, and success of the criminal activity."). The government must prove that Mr. Richards was an organizer or leader; it may satisfy that burden by establishing that the preponderance of the evidence supports that conclusion. *United States v. Jackson,* 935 F.2d 832, 848 (7th Cir.1991).

### A.

The criminal activity charged in this case involved five or more people. The government and the presentence report say Mr. Richards was an organizer or leader; Mr. Richards says he was not. Mr. Richards says he was no more than a middleman who bought from the Rector organization and sold to other distributors. He denies that he established any type of organization or network to receive the marijuana; he denies that he determined who would provide the marijuana; he denies that he determined from where the marijuana would originate. He contends that the Rector organization was well established before he began dealing with it, and that he was not the Rector organization's exclusive customer. He denies ever travelling to Indiana or anywhere else to organize, supervise, or manage the growing, picking, or transporting of the marijuana.

In support of its recommendation, the presentence report notes the conspiracy's scope and duration, the defendant's identification as the ultimate recipient of the marijuana in all but two of the overt acts set forth in the indictment, a presumably significant profit Mr. Richards made on so substantial a quantity of marijuana, his arrangement of the deliveries of marijuana to New York, and a network of dealers who distributed the marijuana to the street within a relatively brief period after delivery.

As an initial matter, the court must determine the focus of its inquiry: Mr. Richards led others, but the court must determine what he must have led to warrant a four-level increase. In *United States v.*

*Tetzlaff,* 896 F.2d 1071, 1074–1075 (7th Cir. 1990), the Seventh Circuit held that an adjustment in the offense level must be based only on the defendant's role in the offense of conviction and not on his role in collateral conduct. *See also United States v. Murillo,* 933 F.2d 195, 199 (3rd Cir.1991) (citing other cases). Other courts disagree. *United States v. Fells,* 920 F.2d 1179, 1183–1185 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2831, 115 L.Ed.2d 1000 (1991); *United States v. Mir,* 919 F.2d 940, 943–946 (5th Cir.1990). The November 1990 amendments to the Sentencing Guidelines forecloses any interpretation of the word "offense" that restricts it to the offense of conviction. The Sentencing Commission viewed the amendment as a simple clarification, not a substantive change, of the earlier guidelines.

◼ The Tenth Circuit recently held that for criminal conduct that occurred before November 1990, a sentencing court must apply the interpretation of § 3B1.1 that prevailed at the time to avoid offending the constitutional prohibition against *ex post facto* laws. *United States v. Saucedo,* 950 F.2d 1508 (10th Cir.1991). Again, other courts disagree. *See, e.g., United States v. Perdomo,* 927 F.2d 111 (2nd Cir. 1991); *see also United States v. Caballero,* 936 F.2d 1292, 1298–1299 (D.C.Cir.1991). Nonetheless, because *Tetzlaff* has not been revisited by the Seventh Circuit, and indeed was reaffirmed in *United States v. Rodriguez–Nuez,* 919 F.2d 461, 465–466 (7th Cir. 1990), the court believes it may look only to the offense of conviction in determining Mr. Richards' role in the offense, and not to any related conduct such as the sale of the marijuana after its arrival in the Bronx.

Accordingly, the court must determine whether Mr. Richards was an organizer or leader of the conspiracy described in Count 2 of the indictment. Such a determination on this sort of record is an unusual exercise; a jury generally "gets the first crack at deciding 'whether there is one conspiracy or several when the possibility of [multiple conspiracies] appears.'" *United*

*States v. Paiz,* 905 F.2d 1014, 1019 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991). In *United States v. Townsend,* 924 F.2d 1385 (7th Cir.1991), the court presented a thoughtful discourse on determining the scope of implied agreements between conspirators even following a trial. The task is no less challenging here.

◼ The presentence report notes the speed with which Mr. Richards was able to dispose of the marijuana upon its receipt; the court agrees with the inference that Mr. Richards had access to a well-organized network of purchaser-distributors to which to peddle the ditchweed. As interpreted in *Tetzlaff,* however, U.S.S.G. § 3B1.1(a) requires that the defendant be an organizer with respect to persons who would be criminally responsible for the offense of conviction.[8] *See also* U.S.S.G. § 3B1.1, Application Note 1. Thus, the court must ask whether Mr. Richards' New York distributors were members of the conspiracy charged in Count 2; stated differently, the court must decide whether the New York distributors were co-conspirators of Rex Froedge and the Rectors. Under the teachings of *United States v. Townsend,* 924 F.2d at 1392–1393, the court must conclude that they were not. *See also United States v. North,* 900 F.2d 131, 134 (8th Cir.1990).

Mr. Richards clearly played some organizational role with respect to some conspirators, but this is insufficient to warrant a four-level increase. Were it otherwise, a twenty-defendant conspiracy with a sufficiently well-defined chain of command could be found to have included nineteen organizers or leaders. The Background Note to U.S.S.G. § 3B1.1 indicates that the Sentencing Commission's primary concern was relative responsibility.

Seventh Circuit case law echoes the theme of relative responsibility. In determining whether Mr. Richards organized or led the conspiracy charged in Count 2, the court is not to compare Mr. Richards to the average participant in a conspiracy such as

---

**8.** The record does not support a finding that the charged conspiracy was "otherwise extensive" due to the involvement of nonparticipants. *Cf.* U.S.S.G. § 3B1.1, Application Note 2.

this; instead, the court must engage in "a comparison of the acts of each participant in relation to the relevant conduct for which the participant is held accountable [and] measure 'each participant's individual acts and relative culpability against the elements of the offense of conviction.'" *United States v. Scroggins*, 939 F.2d 416, 423 n. 9 (7th Cir.1991) (quoting *United States v. Daughtrey*, 874 F.2d 213, 216 (4th Cir.1989)). The court should set forth the subsidiary facts relied on in determining the defendant's role in the offense. *United States v. Jewel*, 947 F.2d 224, 235–236 (7th Cir.1991).

In addition to Mr. Richards, the indictment names eleven other defendants. Mr. Richards appears to have played an organizationally superior role to three: the presentence report and evidence presented at the hearing indicate that Eric Clark would appear to unload marijuana upon arrival in New York; the defendants named "Ali" and "Berris" appear to have served the same role.

Mr. Richards cannot be said, however, to have organized, led, managed, or supervised the remaining defendants. Rex Froedge himself played a supervisory role: he helped maintain the Rector organization after Ron Rector's indictment and comanaged the Rector organization after Mike Rector's emergence from prison. The record does not suggest that Mr. Richards managed or supervised Rex Froedge; indeed, Mr. Froedge's offense level was increased by three levels at his sentencing due to his supervisory/managerial role. The same description applies to Mike Rector and Doug Rector.

Discussion of each remaining individual defendant is unnecessary. Mr. Richards did not direct the activities of any of the few remaining defendants that he met. The remaining defendants either brought ditchweed to Mr. Richards as directed by Mr. Froedge or a Rector, or played some role in the harvesting and/or transportation of the ditchweed under the supervision of Mr. Froedge, a Rector, or someone under their direction.

The record does not demonstrate that Mr. Richards regularly made decisions as to when marijuana should be transported, hired the drivers, *United States v. Castro*, 908 F.2d 85, 90 (6th Cir.1990), recruited distributors, *United States v. Yerks*, 918 F.2d 1371, 1375 (8th Cir.1990), or directed the activity of a subordinate who operated the conspiracy, *United States v. Johnson*, 906 F.2d 1285, 1291–1292 (8th Cir.1990). He did not develop or direct the criminal conspiracy. *United States v. Herrera*, 878 F.2d at 1000. His leadership role was limited to receipt of the ditchweed from the midwest, a single aspect of the conspiratorial activity.

Given Mr. Richards' role with respect to the other participants in the charged conspiracy, the court cannot find that Mr. Richards organized or led the conspiracy described in the charge of conviction.

### B.

■ Nonetheless, Mr. Richards played a significant role in the charged conspiracy. U.S.S.G. § 3B1.1(b), which relates to a manager or supervisor (but not an organizer or leader) of criminal activity that involved five or more participants or was otherwise extensive, describes Mr. Richards.

The criminal activity involved five or more participants besides Mr. Richards: Rex Froedge, Ron Rector, Mike Rector, Eric Clark, Edguardo Velez, the two defendants identified in the indictment as "Ali" and "Berris", as well as the pickers and drivers. Mr. Richards supervised Eric Clark, Ali, and Berris; he directed them to unload marijuana shipments, and they did so. His role was more than that of a mere intermediary. *United States v. Lawson*, 947 F.2d 849, 852 (7th Cir.1991).

■ The court finds no authority for the defendant's argument that Mr. Richards personally must have supervised five or more participants. The defendant may be one of the activity's five participants. *United States v. Barbontin*, 907 F.2d 1494, 1498 (5th Cir.1990); *United States v. Preakos*, 907 F.2d 7, 10 (1st Cir.1990); *cf. United States v. Query*, 928 F.2d 383, 386 (11th Cir.1991) (reserving question). If this

court was correct in *United States v. Weidner*, 703 F.Supp. 1350, 1353–1354 (N.D.Ind. 1988), *aff'd*, 885 F.2d 873 (7th Cir.1989), that a defendant cannot organize or lead himself, it naturally follows that the defendant need not lead five participants. The guideline only requires that the criminal activity involve five or more participants and that the defendant play a managerial or supervisory role. This conspiracy and Mr. Richards satisfy both requirements.

The three-point enhancement of U.S.S.G. § 3B1.1(b) increases Mr. Richards' offense level to 39.

### V.

The government, defense, and presentence report agree that Mr. Richards has clearly accepted personal responsibility for the offense of conviction and, so, is entitled to a two-level reduction in his offense level pursuant to U.S.S.G. § 3E1.1(a). The court agrees.

Mr. Richards' final adjusted offense level is 37.

Because Mr. Richards has no prior criminal convictions, his Criminal History Category is I.

The sentencing range for an offender in Criminal History Category I and offense level 37 is 210 to 262 months. U.S.S.G. Ch. 5, Pt. A. Probation is not permissible. 18 U.S.C. § 3561(a)(1); U.S.S.G. § 5B1.1(b). The court also must impose a term of supervised release of at least five years. 21 U.S.C. § 841(b)(1)(A)(vii); U.S.S.G. § 5D1.2(a). Mr. Richards faces a fine of between $20,000.00 and $4,000,000.00. U.S.S.G. § 5E1.2(c)(3), (4).

The government has agreed to make a non-binding recommendation that the court impose the minimum sentence in the applicable guideline range. The court believes that a 210–month sentence is appropriate in light of the quantity of marijuana involved and the fact that although weapons were possessed, Mr. Richards did not possess them and the weapons were not discharged. Accordingly, the court will accept the government's recommendation at sentencing.