UNITED STATES of America, Appellee,

v.

James Michael WISE, Appellant.

No. 90–1070.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1991.

Decided Sept. 17, 1992.

Dennis J. David, Bryant, Ark., argued, for appellant.

Robert J. Erickson, Washington, D.C., argued (Matt Flemming, J. Michael Fitzhugh and Robert J. Erickson, on the brief), for appellee.

Before LAY,* Chief Judge,
McMILLIAN, RICHARD S. ARNOLD,**
JOHN R. GIBSON, FAGG, BOWMAN,
WOLLMAN, MAGILL, BEAM, and
LOKEN, Circuit Judges, En Banc.

WOLLMAN, Circuit Judge.

## I.

In *United States v. Wise*, 923 F.2d 86 (8th Cir.1991), a panel of this court reversed James Michael Wise's sentence on the ground that the district court had improperly relied upon a probation officer's hearsay testimony without undertaking the confrontation clause analysis required by our decision in *United States v. Fortier*, 911 F.2d 100 (8th Cir.1990). Thereafter, we considered the question of rehearing en banc on our own initiative. We directed the United States to file a supplemental brief stating its position on whether the case should be reheard en banc and explaining why the United States had not petitioned for en banc review. The United States responded by explaining that the Assistant United States Attorney who had handled the appeal had failed to report the panel's decision to the Department of Justice for review by the Solicitor General, as required by the *United States Attorneys' Manual*. Because no extension of time in which to file a petition for rehearing was sought and because a petition for rehearing would thus have been time-barred, the Solicitor General had no occasion to consider the appropriateness of en banc review in this case. In response to our direction that a supplemental brief be filed, the case was resubmitted to the Solicitor General for a review of the merits of our decision and a

determination whether en banc review should be sought. Following such review, the Solicitor General determined that the issue presented was one that should be resolved by the court en banc.

On March 15, 1991, we entered an order vacating the panel opinion and setting the case for argument before the court en banc. We now affirm the sentence imposed by the district court.

## II.

Wise pleaded guilty to two counts of counterfeiting Federal Reserve notes, in violation of 18 U.S.C. § 471.

The sentencing hearing commenced late on the afternoon of October 27, 1989. As is apparent from the record, the district court expressed some dissatisfaction at having been given defense counsel's objections to the presentence report only minutes before the start of the hearing. After determining that the objections had been filed within the ten-day time limit, the district court announced the procedure that would be followed:

Well, what we're going to do—I just do not have time to read 17 pages handed to me five minutes ago. What we're going to do is that I'm going to put Mr. Sexson [the probation officer] under oath. I'm going to ask Mr. Sexson to tell me whether the information, the factual statements contained in the presentence report are accurate to the best of his knowledge and belief.

If there are specific items that you think are not accurate, and I'm only concerned now with the factual statements, if you think some are not accurate, you may cross-examine him about that. You may call any witnesses you wish to in relation to those factual statements but otherwise I'm going to assume that the factual statements—Now forgetting for a moment about the application of the

---

* The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

** The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

guidelines—the facts and statements are correct and accurate unless you are able to convince the Court that they are not.

After being sworn, Sexson testified in response to the district court's questions that the factual matters set forth in the presentence report were accurate to the best of his knowledge and belief and that the report correctly reflected the statements made to him by those persons to whom he attributed the statements. The district court then stated to defense counsel that "[i]f there are factual statements that you believe are inaccurate—again, forgetting for the moment about the application of the guidelines to those facts, you may point those out by cross-examining Mr. Sexson." Defense counsel then questioned Sexson regarding the matters set forth in the presentence report.

Regarding Wise's role in the offense, Sexson testified that, counting Wise, there were five individuals involved in the counterfeiting operation. Two of these were persons on pretrial diversion. The other two were Terry Lankford and Earl Dean Laughlin, Jr., both of whom had been charged and pleaded guilty to counterfeiting charges in state court as a result of their involvement in Wise's counterfeiting scheme. Sexson testified that based upon the admissions made by the two persons who were placed on pretrial diversion and the admissions made by Lankford and Laughlin in connection with the state court proceedings, he believed that Wise had given the four individuals counterfeit money for the purpose of distributing it for him. Sexson acknowledged that he had never spoken with Laughlin and that his information regarding Laughlin had been gathered from the Secret Service's investigation report and from Sexson's conversation with personnel in the prosecuting attorney's office. (Sexson also testified regarding Wise's involvement in a burglary and his involvement in drug use with minors.).

Upon completion of Sexson's testimony, defense counsel called Wise's mother as a witness and, in response to the district court's ruling that the testimony would be cumulative and redundant, made an offer of proof, which was accepted by the district court, that Wise's father would give the same testimony as previously given by Wise's mother on the point in issue.

The testimony completed, the district court then ruled on the disputed factual matters. After ruling that it would impose no enhancement for obstruction of justice, the district court found that the factual matters set forth in the presentence report were accurate and correct and adopted the factual matters contained in the report as the court's findings of fact. The court then gave Wise a four-level enhancement for his role in the offense, pursuant to section 3B1.1(a) of the Sentencing Guidelines, and denied Wise a two-level reduction for acceptance of responsibility. Finding that the sentencing range prescribed by the Guidelines called for a sentence of from 30 to 37 months, the court sentenced Wise to thirty-two months' imprisonment, to be followed by three years on supervised release.

Wise appealed, challenging, among other things, the use of hearsay testimony to increase his offense level for being an organizer of a criminal activity involving five or more participants. As indicated above, the panel opinion reversed and remanded for resentencing because the district court's use of the hearsay violated Wise's rights under the Confrontation Clause.

### III.

As authority for the proposition that the Confrontation Clause applies at sentencing, the panel in *Wise* cited *Fortier*. *Fortier*, in turn, derived this rule from *United States v. Streeter*, 907 F.2d 781, 792 (8th Cir. 1990), which stated, by way of *ipse dixit*, that the Sixth Amendment's Confrontation Clause applies at evidentiary hearings held pursuant to Fed.R.Crim.P. 32(c)(3)(D).

The rule announced in *Streeter*, however, conflicts with previous decisions of this court. In *United States v. Papajohn*, 701 F.2d 760 (8th Cir.1983), for example, we did not apply the Confrontation Clause to evidence introduced at sentencing. Instead, we held that the sentencing court may properly consider "uncorroborated hearsay evidence that the defendant has had an

opportunity to explain or rebut." *Id.* at 763 (citing *Farrow v. United States,* 580 F.2d 1339, 1360 (9th Cir.1978)) ("hearsay evidence of unproved criminal activity not passed on by a court may be considered in sentencing").

Subsequent to our decision in *Papajohn,* Congress passed the Sentencing Reform Act, Pub.L. No. 98–473, 98 Stat. 1837, 1987 (codified as amended at 18 U.S.C. §§ 3551–3673 (1988); 28 U.S.C. §§ 991–998 (1988)), pursuant to which the United States Sentencing Commission issued the Sentencing Guidelines. It is for us, then, to address explicitly what we assumed in *Streeter,* that is, whether sentencing under the Guidelines is so different from previous practice that the Confrontation Clause should apply to evidence introduced at sentencing proceedings.

## IV.

When considering the scope of the right of confrontation, courts have consistently distinguished the guilt phase of a criminal proceeding from the sentencing phase. Historically, "[t]ribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations." *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 1082–83, 93 L.Ed. 1337 (1949) (footnote omitted). Having found a defendant guilty, however, "courts in this country ... practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment...." *Id.* "Whatever the prevailing sentencing philosophy, the sentencing authority has always been free to consider a wide range of relevant material." *Payne v. Tennessee,* —— U.S. ——, ——, 111 S.Ct. 2597, 2606, 115 L.Ed.2d 720 (1991); *Dawson v. Delaware,* —— U.S. ——, ——, 112 S.Ct. 1093, 1097 (1992); *see also United States v. York,* 830 F.2d 885, 893 (8th Cir. 1987) ("A sentencing judge has broad dis-

cretion as to the type of information he may consider, as well as its source.") (pre-Guidelines), *cert. denied,* 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988).

The practice of conducting a wide-ranging inquiry at sentencing is reflected in the United States Code, the Federal Rules of Evidence, and the Guidelines themselves. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court ... may receive and consider for the purpose of imposing an appropriate sentence."); Fed.R.Evid. 1101(d)(3) (rules of evidence do not apply at sentencing);[1] U.S.S.G. § 1B1.4 ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."); U.S.S.G. § 6A1.3(a), p.s. ("In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

The difference in the procedures followed and the standard of proof applied at the guilt and sentencing phases "reflects the judgment that a convicted criminal is entitled to less process than a presumptively innocent criminal defendant, as well as the concern that 'over-burdened trial courts would be greatly disserved by the time-consuming hearings' that more intensive procedural protections would require." *United States v. Kikumura,* 918 F.2d 1084, 1100 (3d Cir.1990) (citations omitted). In addition, the issues at each stage differ. At the trial itself, the guilt or innocence of the defendant is the sole issue. To avoid prejudice, therefore, evidence of other misconduct must generally be excluded.

---

1. For an argument that the Federal Rules of Evidence should be amended to include more protections to reflect the changed role of sentencing hearings, *see* Edward R. Becker and Aviva Orenstein, "The Federal Rules of Evidence After Sixteen Years," 60 Geo.Wash.L.Rev. 857, 885–91 (1992).

*Williams v. New York,* 337 U.S. at 246–47, 69 S.Ct. at 1082–83.

The sentencing phase does not have so narrow a focus. The sentencing judge must fashion a sentence appropriate to the particular circumstances of the case. "Highly relevant—if not essential—to [a judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Id.* at 247, 69 S.Ct. at 1083 (footnote omitted). Accordingly, sentencing judges have "not [been] restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth . Amendment, consider responsible unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics." *Williams v. Oklahoma,* 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959).

■ It is only where the sentencing phase constitutes "a separate criminal proceeding" that due process requires that a defendant have the opportunity to confront and cross-examine witnesses. *Specht v. Patterson,* 386 U.S. 605, 609, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967).[2] In *Specht,* the Court considered a statute which provided that, once convicted of specified sex offenses, a defendant could thereafter be convicted of a second crime and subjected to an additional sentence between one day and life imprisonment. To obtain a conviction under the statute, the prosecution had to show that the person convicted of a sex offense posed a threat of bodily harm to the public or was an habitual offender and mentally ill. The Court determined that "invocation of the [statute] means the making of a new charge leading to criminal punishment." *Id.* at 610, 87 S.Ct. at 1212. Application of the statute violated due process because it allowed conviction based on "a new finding of fact that was not an ingredient of the offense charged," *id.* at 608, 87 S.Ct. at 1211 (citation omitted), yet without such procedural protections as the right to confront and cross-examine witnesses. *Id.* at 610, 87 S.Ct. at 1212.

### V.

■ That the advent of the Sentencing Guidelines has wrought substantial changes in federal sentencing procedures is clear. *See, e.g., Burns v. United States,* — U.S. ——, ——, 111 S.Ct. 2182, 2184–85, 115 L.Ed.2d 123 (1991). For a discussion of some of the significant changes instituted by the Guidelines, *see* Gerald W. Heaney, *The Reality of Guidelines Sentencing: No End to Disparity,* 28 Am. Crim.L.Rev. 161 (1991). *See also* Note, *An Argument for Confrontation Under the Federal Sentencing Guidelines,* 105 Harv. L.Rev. 1880 (1992).

We must determine, therefore, whether the application of the Guidelines has so changed the sentencing phase that it now constitutes a separate criminal proceeding to which the right of confrontation applies.

Before the Guidelines took effect, a sentencing court considered the defendant's uncharged conduct, prior convictions, em-

---

**2.** We recognize that *Williams v. New York, Williams v. Oklahoma,* and *Specht* all considered the application of the right to confront witnesses under the rubric of the Due Process Clause of the Fourteenth Amendment, whereas Wise challenges conduct of the federal government. We nonetheless consider these cases here for two reasons. First, all three address the applicability of the right of confrontation to sentencing proceedings. Their analysis, therefore, illumines the precise issue before us. Second, we note that *Specht* was decided after the Sixth Amendment's Confrontation Clause was found applicable to the States via the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). That

the Supreme Court analyzed the right of confrontation both before and after *Pointer* as an issue of due process suggests that due process, not the Confrontation Clause, provides the relevant framework for testing the use of hearsay testimony at a sentencing proceeding. Other courts have relied on a due process analysis rather than the Confrontation Clause when considering the right of confrontation at sentencing. *See, e.g., United States v. Berzon,* 941 F.2d 8, 16–21 (1st Cir.1991); *United States v. Castellanos,* 904 F.2d 1490, 1495–96 (11th Cir.1990); *United States v. Carmona,* 873 F.2d 569, 574–75 (2d Cir.1989); *United States v. Richards,* 784 F.Supp. 1373, 1377–78 (N.D.Ind.1992).

ployment history, community and family ties, and other factors when fashioning a sentence. *See Williams v. New York*, 337 U.S. at 250 n. 15, 69 S.Ct. at 1084–85 n. 15. The Guidelines have in certain respects narrowed the range of information considered relevant to sentencing. *See* U.S.S.G. Ch. 5, Pt. H (age; education; mental, emotional, and physical conditions; employment record; and family and community ties not ordinarily relevant in determining sentence).

Although the Guidelines have narrowed the categories of information considered relevant to sentencing, the sentencing judge still considers information not strictly relevant to a defendant's guilt or innocence, such as uncharged conduct, when fashioning a sentence. *See United States v. Castellanos*, 904 F.2d 1490, 1494 (11th Cir.1990) (both before and after Guidelines, sentencing courts considered defendant's actual conduct, not just charged conduct). Moreover, the sentencing judge still requires full and complete information as to those categories deemed relevant. *United States v. Beaulieu*, 893 F.2d 1177, 1180 (10th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990) (enactment of the Guidelines does not indicate the need to restrict "the sources of information available to the sentencing judge"). Accordingly, because the sentencing judge still considers information not strictly relevant to a defendant's guilt and needs to conduct a broad inquiry to obtain that information, the Guidelines have not fundamentally transformed the search for information at the sentencing phase.

A second change accompanying the Guidelines is the determinacy of the effect of a certain piece of information, say prior convictions, upon a sentence. Previously, each piece of information concerning a defendant's background and conduct simply constituted one element of the melange from which the sentencing judge derived the sentence. Now, in contrast, one can often determine the exact effect of a certain piece of information upon the ultimate sentence. One can trace, for example, the effect of proof that a defendant has previously committed certain numbers and types

of felonies. The quantification of a defendant's conduct is especially significant in drug offense cases, where the quantity of drugs properly attributable to a defendant has a fixed mathematical impact upon the applicable sentencing range. *See, e.g., United States v. Simmons*, 964 F.2d 763, 773 (8th Cir.1992).

This change, however, simply reflects Congress' decision to limit the scope of the sentencing judge's discretion. It does not provide a reason for increasing the procedural protections at sentencing. *See Castellanos*, 904 F.2d at 1494–95 (Congress' decision to provide federal sentencing courts with additional guidance does not suggest a reason to change the due process calculus as to the appropriate standard of proof). As the Third Circuit has stated, "[w]hether the sentence is one chosen by the court or one within the range mandated by the Sentencing Commission, the consequence for the defendant of the court relying upon hearsay evidence is exactly the same." *United States v. Sciarrino*, 884 F.2d 95, 97 (3d Cir.), *cert. denied*, 493 U.S. 997, 110 S.Ct. 553, 107 L.Ed.2d 549 (1989).

The Guidelines also reflect a shift in the theory of penology. Previously, judges fashioned sentences with a view toward the rehabilitation of the defendant. *See Williams v. New York*, 337 U.S. at 248, 69 S.Ct. at 1084. Accordingly, the Court encouraged the sentencing judge to consider a wide range of information relevant to the defendant's character and history so the remedy fit the offender, not just the crime. The Sentencing Reform Act, in contrast, reflects Congress' intention to place greater emphasis upon achieving the goals of honesty, reasonable uniformity, and proportionality in sentencing. *See* U.S.S.G. Ch. 1, Pt. A3, p.s. Indeed, the Sentencing Reform Act places rehabilitation of the defendant as the last of four goals to be accomplished through a sentence, the first three of which are punishment, deterrence, and incapacitation. 18 U.S.C. § 3553(a)(2). Nonetheless, as set forth above, sentencing judges are encouraged to consider a wide range of information relevant to the nature

and severity of the offense. *See* 18 U.S.C. § 3661; U.S.S.G. §§ 1B1.4, 6A1.3(a), p.s.

While the Sentencing Reform Act and the Guidelines have reordered the priorities of the goals to be achieved through sentencing, the sentencing system still places a premium on obtaining all evidence deemed relevant. *See Payne v. Tennessee,* — U.S. at —, 111 S.Ct. at 2606. This is so because the sentencing judge needs information in order to fashion a sentence appropriate to these reordered goals. It follows that the pre-Guidelines policy of conducting the inquiry free from the strictures of the right of confrontation still obtains.

In addition to pointing out the changes discussed above, some have argued that the Guidelines' use of relevant conduct in fashioning a sentence effectively transforms the sentencing phase into a new guilt phase. We disposed of this argument in *United States v. Galloway,* 976 F.2d 414 (8th Cir.1992) (en banc). There, we applied the due process analysis of *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), and concluded that the use of relevant conduct at sentencing does not require application of the rights to indictment, jury trial and proof beyond a reasonable doubt because uncharged conduct is treated as a sentencing factor, not a new element of the offense. *Galloway,* 976 F.2d at 422–25.

In *McMillan* the Court recognized the distinction between the guilt phase and the sentencing phase. While the "beyond a reasonable doubt" standard applies to the proof of facts necessary to conviction, it does not follow that the same standard applies to the proof of facts at sentencing, even though proof of those facts may increase a defendant's sentence. Likewise, the protections of the right of confrontation apply at the guilt phase, but it does not follow that the same protections apply at sentencing simply because facts proved at sentencing may increase a defendant's sentence. *See Kikumura,* 918 F.2d at 1098–1103 (no need for higher standards of proof and admissibility at sentencing proceedings after advent of Guidelines, except in instances of extreme departure). Indeed, we have repeatedly held that the facts relied upon by the district court at sentencing need be proved only by a preponderance of the evidence. *See, e.g., Simmons,* 964 F.2d at 771; *United States v. Johnson,* 962 F.2d 1308, 1313 (8th Cir.1992); *United States v. Payne,* 940 F.2d 286, 292 (8th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991), and *cert denied,* — U.S. —, 112 S.Ct. 1589, 118 L.Ed.2d 307 (1992).

As we concluded in *Galloway,* the sharp distinction between conviction and sentencing that antedated the Guidelines still exists under the Guidelines regime. The guilt phase remains the stage at which the fact-finder determines whether a defendant broke the law, while at the sentencing phase the court determines the extent to which a defendant broke the law and what punishment would be appropriate. At the latter stage the court may consider relevant conduct in determining a defendant's culpability, but only if it is just that— relevant conduct. The court may consider only

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts [i.e., where the offense level depends on the total harm, quantity of a substance, or where the offense behavior is ongoing or continuous] all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction....

U.S.S.G. § 1B1.3(a).

Just as increasing a defendant's sentence on the basis of relevant conduct does not constitute a conviction for a separate of-

fense, so also establishing a defendant's role in the offense on which he has been convicted does not constitute a criminal prosecution within the meaning of the Confrontation Clause.

We conclude that the enactment of the Guidelines has not so transformed the sentencing phase that it constitutes a separate criminal proceeding. The right to confront witnesses, therefore, does not attach. *See Specht, supra.* This conclusion is in accord with the decisions of other circuits that have addressed the issue.[3] We therefore overrule our holdings to the contrary in *United States v. Fortier* and *United States v. Streeter.*

## VI.

■ We recognize, however, that in certain instances a sentence may so overwhelm or be so disproportionate to the punishment that would otherwise be imposed absent the sentencing factors mandated by the Guidelines that due process concerns must be addressed. This may occur where a defendant's sentence is so greatly increased as a result of considering relevant conduct that the conduct essentially becomes an element of the offense for which the defendant is being punished. *See McMillan,* 477 U.S. at 87–88, 106 S.Ct. at 2416–17 (legislature generally free to create sentencing factors so long as the factors do not become "a tail which wags

the dog of the substantive offense"); *Galloway,* 976 F.2d at 425–26.

■ In the instant case, Wise had a criminal history category of I. On the basis of the challenged hearsay testimony, the district court increased Wise's offense level by four because of his leadership role and denied him a two level decrease for acceptance of responsibility, resulting in an offense level of nineteen rather than fifteen. These rulings effectively increased his sentencing range from 18–24 months to 37–46 months, an approximate two-fold increase.

The maximum sentence prescribed by statute for the crime to which Wise pleaded guilty is fifteen years' imprisonment and a $5,000.00 fine. *See* 18 U.S.C. § 471. The enhancement imposed in this case equals approximately one-tenth of the maximum prison term for the offense. An increase of this magnitude does not raise the concerns that the Court expressed in *McMillan,* 477 U.S. at 87–88, 106 S.Ct. at 2416–17; and thus does not offend due process. *Compare Galloway,* 976 F.2d at 426 (three-fold increase did not offend due process) *with Kikumura,* 918 F.2d at 1098–1103 (twelve-fold departure requires heightened standards for admissibility and proof). Since the increase here is less than that which *Galloway* held did not trigger due process concerns, we find no cause to apply the right of confrontation to Wise's sentencing hearing.

---

**3.** *See United States v. Ushery,* 968 F.2d 575, 583 (6th Cir.1992) (pending resolution of issue by court en banc in *United States v. Silverman,* 945 F.2d 1337 (6th Cir.1991), *vacated, reh'g en banc granted* (Dec. 4, 1991)) (holds that right of confrontation does not apply at sentencing); *United States v. Hershberger,* 962 F.2d 1548, 1553–54 (10th Cir.1992) (rejecting *Fortier,* reaffirming conclusion of *Beaulieu,* 893 F.2d at 1180, and holding that "constitutional provisions regarding the Confrontation Clause are not required to be applied during sentencing proceedings"); *United States v. Holmes,* 961 F.2d 599, 603 (6th Cir.1992) (hearsay statements admissible at sentencing if defendant has opportunity to refute information and if it has sufficient indicia of reliability to support its probable accuracy); *United States v. Johnson,* 935 F.2d 47, 50–52 (4th Cir.) (enhanced openness and formality of guidelines sentencing does not require application of right of confrontation to ex parte communications between probation officer and

court), *cert. denied,* — U.S. —, 112 S.Ct. 609, 116 L.Ed.2d 632 (1991); *United States v. Prescott,* 920 F.2d 139, 143–45 (2d Cir.1990) (advent of guidelines does not alter due process calculus regarding what procedure is required for resolving disputed sentencing factors); *Kikumura,* 918 F.2d at 1102–03 & n. 19 (where sentencing court departs upward dramatically from applicable guidelines range, hearsay statements admissible only if meet intermediate reliability standard, i.e. are reasonably trustworthy); *United States v. Marshall,* 910 F.2d 1241, 1244 (5th Cir.1990) (use of hearsay at sentencing did not deny defendant right of confrontation, citing *United States v. Byrd,* 898 F.2d 450, 452–53 (5th Cir. 1990) ("no doubt" that hearsay admissible to prove relevant conduct)), *cert. denied,* — U.S. —, 111 S.Ct. 976, 112 L.Ed.2d 1061 (1991); *Sciarrino,* 884 F.2d at 97 (as a matter of due process, changes accompanying guidelines do not alter rule that hearsay admissible at sentencing).

## VII.

Although the Confrontation Clause does not apply at sentencing proceedings, this is not to say that there are no constitutional limitations on the use of hearsay evidence at such proceedings. A defendant may not be sentenced on the basis of "misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972). "Uncorroborated hearsay evidence ... [is a] proper topic[ ] for the court's consideration, as long as the defendant is afforded an opportunity to explain or rebut the evidence." *York*, 830 F.2d at 893.

The Guidelines themselves recognize this principle:

When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, *provided that the information has sufficient indicia of reliability to support its probable accuracy.*

U.S.S.G. § 6A1.3(a), p.s. (emphasis added). The commentary to this section explains further:

In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. 18 U.S.C. § 3661. Any information may be considered, so long as it has "sufficient indicia of reliability to support its probable accuracy." Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered "where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means." Unreliable allegations shall not be considered.

U.S.S.G. § 6A1.3, comment. (other citations omitted); *see also United States v. Granados*, 962 F.2d 767, 771–72 (8th Cir.

1992) (sentencing court may consider hearsay if reliable).

■ We hold that the Guidelines' standard for the consideration of hearsay testimony at sentencing meets the appropriate constitutional test and fulfills the Confrontation Clause's basic purpose of promoting the integrity of the factfinding process. *See White v. Illinois*, —— U.S. ——, ——, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992). Before considering whether the hearsay testimony introduced at Wise's sentencing hearing satisfies this standard, we offer a few observations concerning the sentencing court's role in evaluating information presented in support of an enhanced sentence.

As we emphasized in *Galloway*, "[a]lthough the Guidelines certainly channel the court's discretion in sentencing, they also underscore the significant responsibility that remains with the district judge." 976 F.2d at 427. We went on to point out that it is for the district court to resolve as a question of fact whether the allegations of relevant conduct raised by the government are supported by satisfactory proof. *Id.* at 427–28. The same observations apply to a district court's findings regarding a defendant's role in the offense.

Contrary to the views of some who are hostile to the concept of guideline sentencing, the Guidelines do not reduce district court judges to mere automatons, passive compilers of ciphers, or credulous naifs who must accept as canon all that which is presented to them regarding a defendant's involvement in the crime charged or conduct relevant thereto. To be sure, the preponderance of the evidence standard of proof is a lesser burden for the government to satisfy than that necessary to establish a defendant's guilt, but it is not without rigor. It certainly does not relieve the sentencing court of the duty of exercising the critical fact-finding function that has always been inherent in the sentencing process. To say this is not to issue a call to judicial anarchy, nor is it to suggest that the rejection of the reliable is a legitimate means by which to circumvent the strictures of the Guidelines in those cases in which the mandated sentence appears to be

harsher than that which the court would have imposed absent the Guidelines. Rather, it is a recognition of the fact that if the probation officer and the prosecutor believe that the circumstances of the offense, the defendant's role in the offense, or other pertinent aggravating circumstances, merit a lengthier sentence, they must be prepared to establish that pertinent information by evidence adequate to satisfy the judicial skepticism aroused by the lengthier sentence that the proffered information would require the district court to impose. What evidence will be deemed sufficiently reliable to satisfy this burden is for the district courts to determine, exercising the same fact-finding faculties they are daily called upon to utilize in a myriad of situations.

### VIII.

■ The determination of whether hearsay is sufficiently reliable to warrant credence for sentencing purposes necessarily depends upon the particular circumstances of each case. For example, in *United States v. Jewel*, 947 F.2d 224, 236–38 (7th Cir.1991), the sentencing court imposed an obstruction enhancement on the basis of a confidential informant's report to a detective that the defendant had accused him of being an informant and had threatened him. The court doubted whether the informant's report, standing alone, would be sufficiently reliable. It found adequate corroboration for the report, however, because the informant had been shot at within days of the defendant's arrest for a cocaine transaction that the informant had helped arrange. In addition, the informant's assailant had accused the informant of being a "snitch" just prior to the assault.

The Second Circuit has found sufficient indicia of reliability in a situation in which the evidence was gathered from several independent sources, yet did not conflict. *United States v. Carmona*, 873 F.2d 569, 574–75 (2d Cir.1989); *see also United States v. Holmes*, 961 F.2d 599, 603 (6th Cir.1992) (corroboration of hearsay statements by trial testimony generates suffi-

cient indicia of reliability). *But see United States v. Cammisano*, 917 F.2d 1057, 1061–62 (8th Cir.1990) (corroborating stories of confidential informants not sufficiently reliable, in part because evidence was merely "hearsay upon hearsay upon hearsay").

In *Sciarrino*, 884 F.2d at 97, the court held that a co-conspirator's prior inconsistent statement, brought out during his testimony at the sentencing hearing, was sufficiently reliable, when considered along with the other corroborating circumstances present, to satisfy due process standards. Similarly, in *United States v. Aymelek*, 926 F.2d 64, 68 (1st Cir.1991), the court held that a detention officer's affidavit was sufficiently reliable in view of the fact that there was no evidence to suggest that the affiant lacked personal knowledge or had a reason to prevaricate. *See also United States v. Burns*, 894 F.2d 334, 336–37 (9th Cir.1990) (not error to rely on Secret Service report regarding amount of probable or intended loss); *United States v. Cuellar–Flores*, 891 F.2d 92, 93 (5th Cir.1989) (probation officer's testimony sufficiently reliable because he obtained the information from a law enforcement officer and had no motive to distort or misrepresent facts).

■ We conclude that Sexson's hearsay testimony was sufficiently reliable to support the district court's finding that Wise had indeed been an organizer or leader of a criminal activity that involved five or more persons. As we mentioned above, two of these persons were on pretrial diversion as a result of their participation in the offense. Although the record does not tell us the circumstances under which they were diverted from formal court proceedings, it is fair to assume that a condition to such diversion was their agreement to cooperate with the authorities and to give truthful information concerning the details of the offense and those involved therein. At a minimum, then, we can assume that any self-incriminatory statements made by them fell within the definition of a statement against penal interest excepted from the exclusions of the hearsay rule by Fed-

eral Rule of Evidence 804(b)(3) (we put aside that Rule's precondition of the witness's unavailability). When viewed in this light, the information provided by these two unnamed witnesses was more than unsubstantiated rumor or second-hand knowledge.

The information obtained as a result of the state court proceedings against Lankford and Laughlin is rendered even more reliable by virtue of the fact that their admissions of guilt to charges arising out the counterfeiting scheme were made in open court. True, Sexson acknowledged that he had never spoken to Laughlin, but the source of Sexson's information concerning Laughlin—the Secret Service and the personnel in the prosecutor's office—gives the information an aura of authenticity that renders it sufficiently reliable as the basis of a finding of fact on the question in issue. As was true in *Aymelek* and *Cuellar-Flores*, there is nothing in the record before us to indicate that the probation officer had any reason to lie or to distort or misrepresent the facts.

## IX.

■ There remains the question of the procedure followed by the district court in conducting the sentencing hearing. Federal Rule of Criminal Procedure 32(c)(3) governs the manner in which a presentence report is disclosed to a defendant, objections are filed thereto, and disputed matters are resolved by the district court. *See Burns,* — U.S. at —, 111 S.Ct. at 2185; *Granados,* 962 F.2d at 771–72. Chapter Six of the *Guidelines Manual* generally outlines the procedures to be followed at sentencing, although it does not require the district courts to follow any specific format in resolving disputed matters:

> When a reasonable dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information. Written statements of counsel or affidavits of witnesses may be adequate under many circumstances. An evidentiary hearing may sometimes be the only reliable way to resolve disputed issues. The sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and the applicable case law.

U.S.S.G. § 6A1.3, comment. (citation omitted). The procedure to be followed rests in the sound discretion of the district court. *Prescott,* 920 F.2d at 144.

A "presentence report is not evidence and is not a legally sufficient basis for making findings on contested issues of material fact." *Streeter,* 907 F.2d at 791–92. The district court erred, then, in announcing that it would assume that the factual statements in Sexson's presentence report were true and that it was defense counsel's burden to prove that they were not, for "[o]nce a defendant objects to a factual allegation in the presentence report, the court must make '(i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.'" *Granados,* 962 F.2d at 771 (citing Fed.R.Crim.P. 32(c)(3)(D)). The district court's announced course of action was in accordance with that which Judge Becker and Professor Orenstein have charged is a departure from the usual manner in which proposed hearsay evidence is treated: "Thus, in assessing admissibility of evidence in sentencing hearings, courts have turned the general approach to hearsay on its head. The hearsay is presumed reliable—the defendant has the burden of demonstrating otherwise." 60 Geo.Wash.L.Rev. at 889.

Following its announcement, however, the district court put Sexson under oath and then conducted an abbreviated interrogation as to the truth of the statements contained in the report. Defense counsel was then permitted to challenge the evidentiary basis for Sexson's statements, with the government being given an opportunity to in effect rehabilitate Sexson's testimony.

The record does not reveal why the district court chose the course of action that it did. Perhaps it was due to the lateness of the hour at which the hearing commenced

(5:16 p.m.) or the brief time that the court had to review defense counsel's written objections to the presentence report. Nevertheless, although we do not endorse the manner in which it was conducted, we conclude that the hearing did not deprive Wise of due process. He had an opportunity to voice his objections to the presentence report and to cross examine the probation officer who had prepared the report. We perceive no functional difference between the procedure that was followed and the result that would have been reached had the government been required to proceed to establish the truth of the allegations contained in the report by questioning Sexson in the first instance. The basis of Sexson's information was the important fact to be established, and it was developed as well through the procedure that was followed as it would have been had the procedure been that prescribed by the Federal Rules of Criminal Procedure and by our case law.

## X.

Finally, we reject Wise's contention that the district court erred in denying him a two-level reduction for acceptance of responsibility. From what we have said above, and in view of the broad discretion given to the sentencing court in making a finding on this issue, *see, e.g., United States v. Keene*, 915 F.2d 1164, 1170 (8th Cir.1990) (determination regarding acceptance of responsibility not to be disturbed unless it is without foundation), *cert. denied,* — U.S. —, 111 S.Ct. 1001, 112 L.Ed.2d 1084 (1991); *United States v. Nunley*, 873 F.2d 182, 187 (8th Cir.1989) (same), we believe that no further discussion is necessary regarding this issue.

The sentence is affirmed.

RICHARD S. ARNOLD, Chief Judge, joined by LAY, Senior Circuit Judge, and McMILLIAN, Circuit Judge, concurring in part and dissenting in part.

James Michael Wise has been convicted on his plea of guilty to two counts of counterfeiting currency of the United States. The District Court sentenced him to prison for two years and eight months, or 32 months. The sentence was within the Guideline range of 30 to 37 months. The range was fixed by the Court's holding that the offense level was 19 and the criminal history category I. On appeal, Wise makes two arguments: he should have been given a two-level reduction for acceptance of responsibility, and it was wrong to give him a four-level enhancement for being the leader or organizer of criminal activity with five or more participants. This Court affirms. With respect to acceptance of responsibility, I agree. But with respect to Wise's role in the offense, I dissent. Maybe Wise deserves the four-level enhancement. Maybe the same finding would be made if proper procedures were followed. But the procedures followed here violated the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment. Moreover, even if there is no constitutional violation, the judgment should be reversed. The District Court erred in placing the burden of persuasion on Wise and in basing its findings on unreliable information.

### I.

First, the facts. Without the four-level adjustment for role in the offense, Wise's offense level would be 15. His Guideline range would be 18 to 24 months. Assuming a sentence at the lower end of the range (by analogy to the sentence actually imposed, 32 months in a range of 30 to 37), his sentence would be in the neighborhood of 20 months. Thus, the enhancement in question is worth about 1 year, the difference between the 32 months actually imposed and the approximately 20 months that would have been imposed without the adjustment. Wise has served 12 additional months.

The only witness called at the sentencing hearing to support this or any other aspect of the sentence was a probation officer. He had no personal knowledge of any facts relevant to the four-level enhancement. Sentencing Transcript (Tr.) 14. The "evidence" with respect to each person poten-

tially involved with Wise in the offense does not take long to summarize.

1. Terry Lankford. The probation officer testified that Lankford was charged "in state court as a result of [his] ... involvement in this offense." Tr. 14. Lankford is presently serving a sentence. No court records were presented to substantiate or explain this testimony. According to the probation officer, Lankford pleaded guilty to a state crime. The probation officer said that he had "information that [Lankford] admitted that he received the [counterfeit] money from Mr. Wise." Tr. 31. So far as the transcript shows, the witness never spoke with or even saw Lankford.

2. Earl Dean Laughlin, Jr. This man also pleaded guilty in a state court. *"As far as I know,"* the probation officer testified, "he [Laughlin] advised that he received money from Mr. Wise." Tr. 31 (emphasis supplied). The witness had never talked to Laughlin. He had no direct information that Laughlin even knew Mike Wise. The information the witness had about Laughlin came from a Secret Service investigative report "and conversation with the prosecuting attorney's office." Tr. 32. (I take it the reference to "prosecuting attorney" is to the state official who prosecuted Laughlin, though the record is not absolutely clear.) We do not know who had the "conversation" referred to, whether the Secret Service, the United States Attorney's office, or the probation officer himself.

3 and 4. Two individuals, unnamed, on federal pretrial diversion. These two persons apparently admitted their own involvement directly to the probation officer, and, in addition, said something to implicate

Wise. The probation officer refused to give their names.[1]

5. Another unnamed person. The witness said: "I also have an individual who had his state parole revoked as a result of his involvement in the case. He admitted that he was involved." Tr. 31. Again, we have no state-court records to substantiate this testimony. This person, apparently, is not on federal pretrial diversion and has no other claim to anonymity, but the probation officer still failed to give his name.

In sum, we have the following state of affairs: Wise has served an additional 12 months in a federal penitentiary because a witness with no personal knowledge says that a Secret Service file, or some unnamed person in a state prosecutor's office, says that Earl Dean Laughlin, who is not in court, says that Wise was involved with him in the offense and was its leader or organizer. This is double or triple hearsay at best. We do not know exactly even what Laughlin said, or what anyone who ever talked directly to him says he said.

I am astonished that a court of the United States would order anyone kept in prison on such a basis.

II.

The interpretation of any written document, including the Constitution, should begin with its words, though it will rarely end there. The Sixth Amendment says:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district

---

1. The Court "assume[s]," *ante* at 403, "that any self-incriminatory statements made by [these two persons] ... fell within the definition of a statement against penal interest excepted from the exclusions of the hearsay rule by Federal Rule of Evidence 804(b)(3) (we put aside that Rule's precondition of the witness's unavailability)." To the extent that the two unnamed persons incriminated *themselves,* this may be true. But the important point here is not these persons' own guilt, but whether another person, Wise, was also involved in the same offense, and, more important still, whether that other person was the leader or organizer of the of-

fense. One may assume that people will not untruthfully incriminate themselves. But persons on pretrial diversion have a strong incentive to incriminate others. If they tell the authorities what they want to hear about Wise, they may hope for lenient treatment for themselves, perhaps even complete dismissal of charges. Maybe this evidence is "more than unsubstantiated rumor," *ante* at 403–04, but how anyone can characterize it as "more than ... second-hand knowledge," *ibid.,* is beyond me. The *best* that can be said is that it is "second-hand knowledge."

shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

If "plain meaning" is the criterion, this is an easy case. Surely no one would contend that sentencing is not a part, and a vital one, of a "criminal prosecution." To be sure, it is not words in isolation, but words in context, that matter, and the Framers of the Bill of Rights knew nothing of sentencing proceedings separate from the trial itself. Most sentences followed automatically from conviction. In general, the punishment for felony was death. Moreover, a literal reading of the Amendment would require jury trials of facts relevant to sentencing, and the Constitution is not generally thought to contain such a requirement. See *United States v. Galloway*, 976 F.2d 414 (8th Cir.1992) (en banc) (trial by jury not required); *but see id.* at 442–43 (Bright, J., dissenting) (trial by jury required if the facts in issue are themselves a distinct crime). On the other hand, surely defendants in sentencing proceedings enjoy the protection of those portions of the Amendment relating to notice, *cf. Burns v. United States*, — U.S. —, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), the assistance of counsel, and compulsory process for the attendance of witnesses. I have heard no one argue, to take one example, that defendants have no constitutional right to counsel at the time of sentencing. So why not confrontation? It seems to me that the words of the Amendment at least point in the direction of recognizing the right to confront adverse witnesses.[2]

What about the intent of the Framers? If the words' meaning isn't plain, what evidence do we have of the Framers' purpose? The answer seems to be, very little. What we do know, however, points towards recognizing the right of confrontation. The history is well summarized in Justice Thomas's separate opinion in *White v. Illinois*, — U.S. —, —, 112 S.Ct. 736, 745–46, 116 L.Ed.2d 848 (1992):

> In 16th-century England, magistrates interrogated the prisoner, accomplices, and others prior to trial. These interrogations were "intended only for the information of the court. The prisoner had no right to be, and probably never was, present." 1 J. Stephen, A History of the Criminal Law of England 221 (1883). At the trial itself, "proof was usually given by reading depositions, confessions of accomplices, letters, and the like; and this occasioned frequent demands by the prisoner to have his 'accusers,' *i.e.*, the witnesses against him, brought before him face to face...." *Id.*, at 326. See also 5 Wigmore, *supra*, § 1364, at 13 ("there was ... no appreciation at all of the necessity of calling a person to the stand as a witness"; rather, it was common practice to obtain "information by consulting informed persons not called into court"); 9 W. Holdsworth, History of English Law 227–229 (3d ed. 1944). The infamous trial of Sir Walter Raleigh on charges of treason in 1603 in which the Crown's primary evidence against him was the confession of an alleged co-conspirator (the confession was repudiated before trial and probably had been obtained by torture) is a well-known example of this feature of English criminal procedure. See Pollitt, The Right of Confrontation: Its History and Modern Dress, 8 J.Pub.L. 381, 388–389 (1959); 1 Stephen, *supra*, at 333–336; 9 Holdsworth, *supra*, at 216–217, 226–228.

---

**2.** See *Middendorf v. Henry*, 425 U.S. 25, 38, 96 S.Ct. 1281, 1289, 47 L.Ed.2d 556 (1976) (summary courts martial are not "criminal prosecutions" under the Sixth Amendment because they are not adversarial); *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599–2600, 33 L.Ed.2d 484 (1972) (parole-revocation hearings are not within the Sixth Amendment because "[p]arole arises after the end of the criminal prosecution, *including imposition of sentence*"

(emphasis added)); *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 256–57, 19 L.Ed.2d 336 (1967) (presence of counsel required at sentencing because sentencing is a "stage of a criminal proceeding where substantial rights of a criminal accused may be affected"); *United States v. Garbett*, 867 F.2d 1132, 1136 (8th Cir.1989) (discussing application of Fed.R.Crim.P. 32 *"at the sentencing phase of a trial"* (emphasis added)).

Apparently in response to such abuses, a common-law right of confrontation began to develop in England during the late 16th and early 17th centuries. 5 Wigmore, *supra,* § 1364, at 23; Pollitt, *supra,* at 389–390. Justice Story believed that the Sixth Amendment codified some of this common law, 3 J. Story, Commentaries on the Constitution of the United States 662 (1833), and this Court previously has recognized the common-law origins of the right. See *Salinger v. United States,* 272 U.S. 542, 548, 47 S.Ct. 173, 175, 71 L.Ed. 398 (1926) ("The right of confrontation did not originate with the provision in the Sixth Amendment, but was a common-law right having recognized exceptions"). The Court consistently has indicated that the primary purpose of the Clause was to prevent the abuses which had occurred in England. See *Mattox v. United States,* 156 U.S. 237, 242, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895) ("The primary object of the [Confrontation Clause] was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness ..."); *California v. Green,* 399 U.S. [149] at 156, 90 S.Ct. [1930] at 1934 [26 L.Ed.2d 489 (1970)] ("It is sufficient to note that the particular vice that gave impetus to the confrontation claim was the practice of trying defendants on 'evidence' which consisted solely of *ex parte* affidavits or depositions secured by the examining magistrates, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact"); *id.,* at 179, 90 S.Ct., at 1946 (Harlan, J., concurring) ("From the scant information available it may tentatively be concluded that the Confrontation Clause was meant to constitutionalize a barrier against flagrant abuses, trials by anonymous accusers, and absentee witnesses"); *Dutton v. Evans,* 400 U.S. [74] at 94, 91 S.Ct. [210] at 222 [27 L.Ed.2d 213 (1970)] (Harlan, J., concurring in result) (the "paradigmatic evil the Confron-

tation Clause was aimed at" was "trial by affidavit").

What is happening to Wise in this case is not exactly the same thing, but it's close enough to cause me to suspect that the Framers would easily recognize some of the abuses that concerned them. Wise has been tried, so far as sentencing goes, on the basis of prosecution documents: the presentence report (which relies heavily on prosecution sources), investigative reports of the Secret Service, composed of employees of the adverse party, and so forth. Some of these documents he has not even seen. Some of the crucial people mentioned in them are not even named. Such a procedure attacks the core values of the Confrontation Clause.

About all this the Court says nothing. It does not quote the Sixth Amendment, nor does it mention the Framers' intent. Its reliance, instead, is on recent history. Traditionally, the Court says, procedure at sentencing has been informal, and confrontation has not been required. The argument depends entirely on *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), and collapses on close examination. *Williams,* in the first place, is not a Confrontation Clause case at all. It is a due-process case from a state court, decided before the Confrontation Clause was held, in *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), applicable to the states. And *William*'s whole underpinning is the system then obtaining of discretionary sentencing, a system believed, in those days, to represent the best of modern penology—the very system the Sentencing Reform Act of 1984 was passed to destroy! Passages can be cited that seem, if one reads nothing else, to support the Court's position, but such an approach ignores the most basic principle of legal analysis: Case law is based on reason, and if the reason justifying the result of a case ceases to exist, the case loses its authority. *Cessante ratione, cessat ipsa lex.* If this is not enough, consider two more aspects of *Williams.* First, it was decided in a gentler age, when probation officers were supposed "to *aid* offenders," 337 U.S. at 249, 69 S.Ct. at 1084 (emphasis added), not com-

pile evidence or appear as witnesses against them. Second—and this has been called "the most important line in the opinion," Saltzburg, *Sentencing Procedures: Where Does Responsibility Lie?*, 4 Fed. Sent.Rep. 248, 248 (1992)—Williams did not contest any of the facts allegedly shown by the hearsay used against him! "The accuracy of the statements made by the judge as to appellant's background and past practices was not challenged by appellant or his counsel, nor was the judge asked to disregard any of them or to afford appellant a chance to refute or discredit any of them *by cross-examination* or otherwise." *Williams,* 337 U.S. at 244, 69 S.Ct. at 1081–82 (emphasis added).

In short, *Williams* was decided in the context of a sentencing "system that focuse[d] on subjective assessments of rehabilitative potential...." Saltzburg, *supra,* 4 Fed.Sent.Rep. at 250. Sentencing was intuitive and impressionistic. The world is very different now. For most defendants in the federal courts, sentencing is what the case is really about. And the process is much more fact-driven, in the sense that specific, identifiable increments of punishment are a legal consequence of specific past conduct, other than the offense of conviction itself. Some discretion remains, it is true. The court is free to choose within the Guidelines range—but the range is fairly narrow; the upper limit may not exceed the lower by more than 25 per cent. The court may even depart from the Guidelines—but only if certain findings are made, the propriety of which, like almost every other question under the Guidelines, is reviewable on appeal at the instance of either side. And the importance of the sentence imposed by the court is much greater. Parole has been abolished. Sentences are diminished only by the accrual of good time, which is limited to slightly less than 15 per cent. The world of sentencing has in fact been "revolutionized." The word is not mine, but the Supreme Court's. *Burns v. United States,* —— U.S. at ——, 111 S.Ct. at 2184.

*Williams* is obsolete for other reasons as well. Trial judges no longer have unlimited discretion in either the range of information they may consider or the punishment they may impose. Not only do the Guidelines attach a mandatory penalty to proof of particular facts, but they greatly restrict the type of information a judge may consider. Under U.S.S.G. Ch. 5, Pt. H, age, education, mental, emotional, and physical condition, employment history, and family and community ties are no longer relevant to sentencing.[3] The Court decides this is not of great significance since the "sentencing judge still considers information not strictly relevant to a defendant's guilt or innocence, such as uncharged conduct, when fashioning a sentence." *Ante* at 398. As to this category, the judge "still requires full and complete information." *Ante* at 399. Therefore, the Court reasons, the Guidelines have not "fundamentally transformed the search for information at the sentencing phase." *Id.* I disagree. What the Court appears to be saying is that as long as we still conduct a broad, unlimited search for the information the Guidelines do allow, it is irrelevant that we have eliminated some categories of allowable information. Somehow the deck of available facts seems a bit more stacked against the defendant under this regime. Before, both the defendant and the prosecution contributed information to the process. The defendant played his cards—employment history, mental, physical, and emotional state, potential for rehabilitation, and other favorable policy arguments—and the prosecutor played his. The judge would then consider all of the information and impose a sentence which was fair and reasonable under those particular circumstances. The Court now says there is no need to change the rules, even though the prosecutor has all the cards and the judge is required by law to impose a sentence depending not upon his independent analysis of the facts, but

---

**3.** See Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers,* 101 Yale L.J. 1681, 1715 (1992) (arguing that Ch. 5, Pt. H is incon-

sistent with 18 U.S.C. § 3661, providing that "[n]o limitation shall be placed on the information" to be considered by the sentencing court).

upon what cards the prosecutor chooses to play. In general, the sentencing factors so important under the new scheme all point in one direction: towards longer sentences. The major exception is cooperation of the defendant with the prosecution, and in many cases this fact is relevant only on the prosecution's motion.

Next, the Guidelines have replaced the goals of rehabilitation and individualized sentencing with punishment and uniformity. See 18 U.S.C. § 3553(a)(2) and U.S.S.G. § 1A3. The Court admits this, but states that since the sentencing system still places a premium on obtaining all evidence relevant to the new goals, the absence of the right of confrontation still stands. *Ante* at 399. Once again, the Court misses the mark. We are no longer fitting the punishment to the criminal, but only to the crime. The information obtained is not used to decide how best to rehabilitate the defendant—a goal which is arguably shared by the defendant—but to determine how long he will be imprisoned. Allowing a sentencing judge to conduct an inquiry free from evidentiary strictures was perhaps permissible in achieving this mutual goal and sentencing the defendant individually. It has no place in a system where the goal is no longer mutual. When you change the prosecution's goals to retribution and uniform sentencing, you should add procedural safeguards to ensure that the proceeding remains fair to the defendant.

Furthermore, sentencing is now fully adversarial. Rule 32 "contemplates full adversary testing of the issues relevant to a Guidelines sentence." *Burns,* — U.S. at —, 111 S.Ct. at 2185. "[T]he facts that are now relevant to sentencing are far more susceptible to trial-type proof than those facts relevant under the rehabilitative scheme, because they implicate claims about the offense of conviction or other related offenses rather than claims about the offender's background." Note, *An Argument for Confrontation Under the Federal Sentencing Guidelines,* 105 Harv. L.Rev. 1880, 1886 (1992). (Remember that Congress has now expressly disavowed rehabilitation as a purpose of sentencing. 28

U.S.C. § 994(k)). The Guidelines themselves recognize that a significant change has occurred. "The court's resolution of disputed sentencing factors will usually have a measurable effect on the applicable punishment. More formality is therefore unavoidable if the sentencing process is to be accurate and fair." U.S.S.G. § 6A1.3, commentary. In sum, "sentencing proceedings are arguably the most important judicial business conducted by Article III judges." Becker & Orenstein, *The Federal Rules of Evidence After Sixteen Years,* 60 Geo.Wash.L.Rev. 858, 889 (1992). No reasonable effort should be spared to make these proceedings fair and accurate in perception and reality.

The position I advocate has significant support in pre-Guidelines Supreme Court case law. The closest case is *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). There, confrontation rights were required in the context of a state sentencing system that increased the maximum sentence from ten years to life upon a finding by the court that the offender, on the basis of past conduct, "if left at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill." *Id.* at 607, 87 S.Ct. at 1211. The system contemplated an adversary proceeding and "a new finding of fact that was not an ingredient of the offense charged." *Id.* at 608, 87 S.Ct. at 1211–12. The Supreme Court held that the defendant was entitled to "an opportunity to be heard, be confronted with the witness against him, have the right to cross-examine, and ... offer evidence of his own." *Id.* at 610, 87 S.Ct. at 1212. *Williams* was easily distinguished.

The Confrontation Clause applies, and the case should be remanded for resentencing in a manner consistent with the Clause.

### III.

The Court suggests, *ante* at 398 n. 2, that the issue might better be analyzed in terms of due process than under the Confrontation Clause. In my view, this case would come out the same way under the

Due Process Clause. The right to confront and cross-examine witnesses is part of the process that is due before a defendant may be deprived of his liberty for an additional period of time.

First, there is surely no doubt that what the defendant lost in the present case is "liberty" within the meaning of the Due Process Clause of the Fifth Amendment. The Court's opinion assumes as much, and it would be hard to deny. Wise has spent 12 more months in jail because of the contested facts. He has lost liberty in the most basic sense. He has been in jail instead of free. When this sort of loss occurs as punishment for crime or some other sort of infraction, one has been deprived of the sort of "liberty" that derives its protection directly from the Constitution. The "liberty interest" analysis of more recent case law is unnecessary. See *Jones v. Mabry,* 723 F.2d 590 (1983).

Even if a liberty-interest analysis had to be undertaken, the same result would follow. Our opinion in *United States v. Galloway,* 976 F.2d 414, 425 (8th Cir.1992) (en banc), so holds. " 'Once convicted, a defendant has a liberty interest in the correct application of the Guidelines within statutory limits....' " *Ibid.* (quoting *United States v. Mobley,* 956 F.2d 450, 455 (3d Cir.1992)).

The real question is, what process is due? Neither *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), nor *Galloway* decides the issue with respect to the right of confrontation. *McMillan* holds that due process does not require the government to prove a sentencing factor by clear and convincing evidence. A preponderance is enough to satisfy due process. And *Galloway* holds that the use of relevant conduct in sentencing does not trigger the rights to indictment, jury trial, and proof beyond a reasonable doubt. There is a distinction between the rights denied in *Galloway* and the right at issue here. The *Galloway* Court held that un-

charged conduct is a sentencing factor, not a new element of the offense and not a separate offense. Therefore, it reasoned, indictment and a jury trial are not necessary. Additionally, the standard of proof is elastic and stretches to fit a particular situation depending upon a balancing of the competing interests. Unlike the right to confrontation, the question with standard of proof is not whether one exists, but where on the sliding scale it lies. The Court in *Galloway* held that a lesser standard of proof was adequate to insure fairness in sentencing. The right of confrontation and cross-examination, on the other hand, has no sliding scale. It is an all-or-nothing proposition. Since *Galloway* itself says that the defendant has a liberty interest in a correct application of the Guidelines, we should be wary of giving him nothing. The very fact that the burden of proof offers little protection to the defendant is one of the best reasons to allow him to cross-examine the prosecutor's sources of information.

We have specific guidance from the Supreme Court on how to decide whether due process requires a given procedure. In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court held that three factors must be considered: the private interest at stake; the government's interest, including the cost of the additional procedural requirement; and the extent to which more accurate fact-finding would result from the additional procedural requirement.[4] A weighing of these factors points decisively in favor of the right of confrontation. The private interest—the interest in being free of unjust imprisonment for crime—is among the highest recognized by the law. In fact, it is *the* highest, I think, with two exceptions: the interest in not being unjustly convicted in the first place, and the interest in not being unjustly put to death. The government has an interest in preventing defendants from unfairly escap-

---

4. In *Medina v. California,* —— U.S. ——, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), the Court held that the *Mathews* analysis does not apply to questions of criminal procedure in the state courts. The Court's reasoning draws heavily on considerations of federalism, *id.* —— U.S. at ——, 112 S.Ct. at 2577, and it seems that *Mathews* is still generally applicable under the Due Process Clause of the Fifth Amendment.

ing appropriate punishment, but this interest is not at all likely to be harmed by allowing defendants a right of confrontation. The government's major interest is parallel to the defendant's, if not identical: the interest in seeing that the sentence imposed is based on facts accurately found. It is by now a commonplace that the interest of the United States "in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) (Sutherland, J.). The only real down side from the government's viewpoint is that sentencing will cost it more time and money. In most cases, though—and this seems to be true here—the additional burden would be light. It could be satisfied by invoking firmly rooted hearsay exceptions or by calling witnesses who will often be either government employees (*e.g.*, Secret Service agents) or other persons easily available (*e.g.*, co-defendants on pretrial diversion). Add to all this the significant increase in accuracy that confrontation and cross-examination bring. In Dean Wigmore's phrase, cross-examination is "the greatest legal engine ever invented for the discovery of truth." 5 Wigmore, *Evidence* 32 (Chadbourn rev. ed. 1974).

The right of confrontation is worth the cost. It is, after all, not a "technicality" serving some extraneous purpose (a view that some take of the Fourth Amendment Exclusionary Rule, for example). It bears directly on and significantly advances the truth-seeking function of sentencing hearings. Confrontation is required by due process. See Note, *supra*, 105 Harv.L.Rev. at 1898.

### IV.

Even if I agreed with the Court about the Constitution, I could not vote to affirm this sentence. The procedure followed was indefensible (indeed, the Court does not really try to defend it). And the evidence underlying the District Court's finding was not reliable, if that word is to retain any substance.

The District Court began the sentencing hearing by announcing that it would not read the defendant's objections to the presentence report, even though the objections were timely. It then called as a witness an official of its own, the probation officer who wrote the presentence report, and told the defendant he could cross-examine. The Court warned, however, in a quite extraordinary statement, that

I'm going to assume that the factual statements [in the presentence report] are correct and accurate unless you are able to convince the Court that they are not.

Sent. Tr. 6.

This Court today reaffirms the holding of *United States v. Streeter*, 907 F.2d 781, 791–92 (8th Cir.1990), that a "presentence report is not evidence and is not a legally sufficient basis for making findings on contested issues of material fact." *Ante* at 404. It also repeats the rule that facts relied on at sentencing must be proved by a preponderance of the evidence. *Ante* at 400. The District Court overtly violated these two rules. The burden was put on the *defendant* to *disprove* the probation officer's boilerplate assertion that his own presentence report was correct! There is such a thing as harmless error, of course, but the Court's opinion does not say the error was harmless. It does not say that the evidence with respect to the sentencing factor in question was so overwhelming that misplacement of the burden of persuasion clearly made no difference. It says simply that there was "no functional difference between the procedure that was followed and the result that would have been reached" if correct procedures had been followed. Can this be so? Is it really true now in this Circuit that it doesn't matter which side has the burden of proof at sentencing?

The Court also labels the evidence "reliable." I respectfully disagree. In the first place, there is nothing reliable about a system in which a court purports to judge the credibility of one of its own employees. I concede that the record shows no reason to suppose the probation officer would lie.

But what about unintentional mistakes, faulty memory, inaccurate repetition of what others had told him? The Court says the source of the probation officer's information, "the Secret Service and the personnel in the prosecutor's office—gives the information an aura of authenticity...." *Ante* at 404. The Court has a touching faith in governmental authority which I do not share. Have members of a police agency or of a prosecution force ever exaggerated the facts? Have they ever, perhaps, remembered only those portions of a conversation helpful to their position? Have they ever gone so far as to lie? Of course they have. They are not immune from human frailty or free of selfish interest. No doubt outright lying is rare. I have never known the Department of Justice to misrepresent facts in court. But if the mere fact that information comes from the government gives it "an aura of authenticity that renders it sufficiently reliable as the basis of a finding of fact," *ante* at 404, why bother to have any sentencing hearings? Let's just hear the government's statement of facts and dispense with formalities like testimony and burden of proof.

I would reverse.

LAY, Senior Circuit Judge, joined by McMILLIAN, Circuit Judge, dissenting.

Chief Judge Arnold's dissenting opinion reflects an exceptional dissertation on the fundamental fairness missing from the Federal Sentencing Guidelines. Unless Congress and the Sentencing Commission intended to abandon the Constitution of the United States altogether, the dissenting analysis, succinctly and objectively, points up one of the more fundamental weaknesses inherent in the application by district courts of the Sentencing Guidelines.

I am pleased to concur and join in Chief Judge Arnold's dissent.

BEAM, Circuit Judge, concurring specially.

I generally concur in the majority opinion prepared by Judge Wollman except to the extent that it differs with the reasoning in my dissent in *United States v. Galloway*, 976 F.2d 414 (8th Cir.1992) (en banc). I must confess, however, that the majority opinion in *Galloway* now makes the due process and confrontation issues in this case very close questions. The *Galloway* majority fends off the dissenting view that use of U.S.S.G. § 1B1.3(a)(2) results in manifest injustice, with the following observation:

> The commentary makes clear that "[t]he sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law." U.S.S.G. § 6A1.3 comment.
>
> When uncharged conduct is alleged as relevant conduct to substantially increase the sentencing range, district judges are authorized to require the United States Attorney to undertake the burden of presenting evidence to prove that conduct. In the final analysis, the determination of what is relevant conduct is a factual question to be decided by the district judge. The record in this case demonstrates that the Assistant United States Attorney was prepared to assume the appropriate burden and to present evidence of the uncharged conduct before the district court in the sentencing proceedings. The district court foreclosed such efforts by its ruling on the constitutional issues. We are satisfied that on remand, the sentencing inquiry will be conducted according to such standards.

*Galloway*, 976 F.2d at 427–28. I suggest that such fact finding under section 1B1.3(a)(2) puts a different gloss on the nature of the sentencing proceeding. Obtaining information for use under U.S.S.G. § 1B1.4 is one thing, gathering it for the purpose of creating greatly increased sentencing ranges under section 1B1.3(a)(2) is another.

I also differ with the majority opinion in this case if there is any implication in the fourth paragraph on page 399 that the federal district courts were not, pre-guideline, "honest" in carrying out their sentencing responsibilities. Laws enacted by Con-

414

gress that provided a basis for routine alteration of judicial sentences by the executive branch may support this lack of "honesty" observation. This was, however, a matter over which the sentencing courts had little, if any, control. Further, I do not join in the first sentence of the fifth full paragraph in the second column on page 402. The guidelines do, in fact, impose some element of every state of mind referred to in that sentence.